**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

LOWTECH STUDIOS, LLC,

Plaintiff,

v.

KOOAPPS LLC, JONATHAN CHANG, and CHUN-KAI WANG,

Defendants.

KOOAPPS INC.,

Counterclaim-Plaintiff,

v.

LOWTECH STUDIOS, LLC and STEVEN HOWSE,

Counterclaim-Defendants.

CASE NO.: 1:23-cv-1437-DAE

**DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT WITNESS JIM W. BERGMAN**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF BERGMAN'S OPINIONS..................................................................2

A. The Opening Report..........................................................................................2

1. Two-Player Market Opinion ........................................................................3

2. Lost Profits Opinion......................................................................................6

3. Lost Enterprise Value Opinion ....................................................................9

4. Additional Opinions Lacking Methodology ................................................9

III. LEGAL STANDARD.................................................................................................10

IV. ARGUMENT..............................................................................................................11

A. Bergman's Two-Player Market Opinion Should Be Excluded...........................11

B. Bergman's Lost Profits Opinion Should Be Excluded .......................................14

C. Bergman's Lost Enterprise Value Opinion Should Be Excluded .........................16

D. Bergman's Opinions Utterly Lacking in Any Methodology or Foundation Should Be Excluded........................................................................................17

1. Bergman's Biased Summary of Consumer Reviews ...............................17

2. Bergman's Opinions Related to the Word Marks Should Be Excluded....19

3. Bergman's False Advertising Actual Damages Opinion is Baseless.........19

V. CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)....................10, 11

*Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*,
2008 WL 375505 (S.D. Tex. Feb. 11, 2008)....................11

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
301 F. Supp. 2d 612 (S.D. Tex. 2003)....................12

*Escalante v. Creekside Logistics, LLC*,
2019 WL 9135758 (W.D. Tex. Feb. 12, 2019)....................17

*Exume v. United Cargo Logistics, LLC*,
2025 WL 1688329 (E.D. Tex. June 16, 2025)....................11, 15

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................12

*Huawei Techs. Co. v. Huang*,
2019 WL 2077821 (E.D. Tex. May 9, 2019)....................14

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d. 531 (S.D.N.Y. 2004)....................18

*Johnson v. Cox*,
2023 WL 4686435 (N.D. Tex. July 21, 2023)....................19

*JRL Enters., Inc. v. Procorp Assocs., Inc.*,
2003 WL 21284020 (E.D. La. June 3, 2003)....................12

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007)....................11

*Marlin v. Moody Nat'l Bank, N.A.*,
248 F. App'x 534 (5th Cir. 2007)....................14

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998)....................12, 19

*Moore v. Int'l Paint, L.L.C.*,
547 F. App'x 513 (5th Cir. 2013)....................19

*Nordetek Env't, Inc. v. RDP Techs., Inc.*,
862 F. Supp. 2d 406 (E.D. Pa. 2012)....................16

*Opal Labs Inc. v. Sprinklr, Inc.*,
2021 WL 7159869 (D. Or. Nov. 8, 2021)....................16

*Prepaid Wireless Services, Inc. v. Southwestern Bell Wireless, Inc.*,
2002 WL 34367328 (S.D. Tex. July 23, 2002)....................13, 19

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
200 F.3d 358 (5th Cir. 2000)....................11

*Sigur v. Emerson Process Mgmt.*,
2007 WL 1893632 (M.D. La. Apr. 25, 2007)....................12, 13

*Stanacard, LLC v. Rubard LLC*,
2016 WL 6820741 (S.D.N.Y. Nov. 10, 2016)....................16

*Stinson Air Ctr., LLC v. XL Speciality Ins. Co.*,
2005 WL 5979096 (W.D. Tex. July 8, 2005)....................11

*Tendeka, Inc. v. Glover*,
2015 WL 2212601 (S.D. Tex. May 11, 2015)....................18

*United Daughters of the Confederacy v. Nirenberg*,
2018 WL 5114150 (W.D. Tex. Oct. 18, 2018)....................17

*Wellogix, Inc. v. Accenture, LLP*,
823 F. Supp. 2d 555 (S.D. Tex. 2011), *aff'd*, 716 F.3d 867 (5th Cir. 2013)....................16

**RULES**

Fed. R. Evid. 702....................10

Defendants Kooapps Inc., f/k/a Kooapps LLC, Jonathan Chang, and Chun-Kai Wang (collectively, "Kooapps" or "Defendants") bring this motion against Plaintiff Lowtech Studios LLC ("Lowtech") to exclude select opinions and testimony of Lowtech's damages expert Jim W. Bergman (the "Motion").

## I. INTRODUCTION

Bergman opines that Lowtech is entitled to a staggering $31.5 million in disgorgement and actual damages, but this overinflated estimate reflects unsustainable assumptions and fatal deficiencies, not the careful methodology required under the law. This includes (i) inventing from whole cloth a "two-player market" that conveniently consists of the two parties' apps (Slither.io and Snake.io) alone, ignoring the tens of thousands of other games in the ultra-competitive mobile casual gaming market; (ii) charging Kooapps for a stand-alone [redacted] (iii) incorporating lost enterprise value into his damages calculation even though the law does not allow this measure of damages; and (iv) offering an array of opinions so devoid of methodology that Bergman was forced to concede in his deposition that he did not "[redacted]"

*First*, Bergman's two-player market opinion should be excluded, as Bergman totally failed to conduct any adequate market analysis within the ultra-competitive mobile gaming market. Instead, Bergman accepts at face value, and without any inquiry, the assertion by Lowtech's principal Steven Howse that Slither.io's sole competitor is Snake.io.

*Second*, Bergman's lost profits opinion should be excluded as it is premised on the unsupportable assumption that Lowtech made [redacted] Here as well, Bergman relies on self-serving justifications by Howse without consideration of flatly contradictory

available evidence.

*Third*, Bergman's lost enterprise value opinion should be excluded as improper because lost enterprise value is only available under the law when there is a total loss of business, and Bergman makes no claim that Slither.io suffered a total loss of business.

*Fourth*, Bergman seeks to offer several opinions that have no support in any definable methodology or expertise and thus should be excluded. These include Bergman's opinions regarding consumer reviews, actual damages and disgorgement for trademark infringement and trademark dilution, and actual damages for false advertising.

Finally, Mr. Bergman constructs many of his disgorgement and damages models using the survey results from Lowtech's survey expert Sarah Butler. *E.g.*, Expert Report of Jim Bergman ("Bergman Report") at ¶¶ 62-71, 78, Schedule 4.1, attached as Exhibit 1 to the Declaration of Chloe Delehanty filed concurrently herewith. To the extent that the Court excludes any of Butler's opinions, the Court should likewise exclude any of Bergman's opinions that rely on Butler's surveys.

## II. SUMMARY OF BERGMAN'S OPINIONS

Lowtech retained Bergman to calculate damages in connection with Lowtech's four claims against Kooapps: (1) trademark infringement from Kooapps' use of the Slither.io logo and word marks, (2) trademark dilution from Kooapps' use of the Slither.io logo and Slither word marks, (3) trade dress infringement, and (4) false advertising. *Id.* ¶¶ 13-14. Bergman submitted an opening report (Bergman Report), and a report responding to the report authored by Kooapps' rebuttal expert Carrie Distler ("Bergman Reply Report" (Ex. 2)), along with a report addressing Kooapps' counterclaims not at issue here.

### A. The Opening Report

In his opening report, Bergman purports to calculate disgorgement and actual damages

associated with Lowtech's claims. Bergman concluded that, should Kooapps be found liable on all four claims, Kooapps is liable for $13,544,817 in disgorgement and $18,002,047 in actual damages. Bergman Report ¶ 244.

**1. Two-Player Market Opinion**

At the heart of Bergman's disgorgement and actual damages analyses is his two-player market methodology. Bergman defines the two-player market—which he refers to as a "winner-take-most" market or "zero-sum winner-take-most" market—to include only the Snake.io and Slither.io games. *Id.* ¶¶ 76, 92, 116, 140.[1] He assumes that [redacted] *Id.* ¶ 76. He claims that [redacted] *Id.* ¶ 75. In particular, he assumes that any increase in downloads and Monthly Active Users ("MAUs") for Snake.io comes at a loss of downloads and MAUs for Slither.io (*id*.), which he purports to demonstrate in charts showing rates of downloads and MAUs for Snake.io and Slither.io. *Id.* ¶¶ 73-74; Bergman Reply Report ¶ 55.

Bergman's definition of the two-player market comes from two sources: an examination of download and MAU data for Slither.io and Snake.io (Bergman Report ¶¶ 73-77) and discussions with Howse (Bergman Reply Report ¶ 61). ***But Bergman did not do any independent research or review any revenue, downloads, investments, or MAUs for any game besides Snake.io and Slither.io***. Bergman Tr. 157:4-7, 157:10-13, 164:15-23, 166:1-23. Indeed, even when Howse asserted to Bergman that various other games lacked market presence or did not have certain

[1] At his deposition, Bergman acknowledged that "[redacted]" Deposition Transcript of Jim Bergman ("Bergman Tr." (Ex. 3)) at 237:19-25 ([redacted]).

capabilities, Bergman did nothing to verify those statements. *Id.* at 181:14-23. Bergman also disregarded—without methodological analysis—other games identified as competitors by Lowtech's survey expert Butler[2] and even by Howse.[3] Nor did Bergman consider any publicly available financial statements filed by mobile gaming companies, such as Form 10-Ks (*id.* at 170:8-16) or request from Howse whether Sensor Tower had available data on any other mobile game (*id.* at 158:3-8, 162:23-163:1). Bergman also admitted that the games that appear after a search of the word "slither" in the Apple App Store are competitors of Slither.io, but did not analyze such games or include them within his two-player market. *Id*. at 205:12-19.

Bergman's failure to conduct any analysis of other market participants stands at odds with recognized sources, and even Bergman's own admissions, that a damages expert should consider a variety of sources in conducting research on the subject company's industry. *Id.* at 43:10-13 ([redacted]). Bergman identifies no sources to show that his two-player market methodology is reliable; he certainly points to no support that his methodology has been tested, peer-reviewed, and generally accepted. At his deposition, Bergman testified that his

---

[2] Butler—on whom Bergman relies for the purposes of his report—includes a variety of snake-like and hypercasual games as part of the relevant market for the logo survey. *See* Ex. 4, Butler Report ¶ 58 (discussing the Apple App Store and Google Play search results shown to logo survey respondents); *id.* ¶ 58 n.46 ("The actual search results included more than 70 games. The survey was not a test of the exhaustive set of search results themselves, but instead used to depict how the two marks ***appear in the marketplace***.") (emphasis added); *see also id.* Ex. C.5 (screenshots of the search results, which include snake-like and hypercasual games).

[3] Howse himself stated that [redacted] *See* Ex. 5 (March 2, 2016 email in which Howse states, [redacted]. Bergman's report characterizes [redacted] *See* Bergman Tr. 151:21-25 [redacted].

methodology for defining a relevant market is based on his "[redacted]" (*id.* at 39:18-21), but he could not identify a single textbook, treatise, or case in support of his two-player market methodology (*id.* at 39:22-41:4).

Similarly, Bergman reviewed a number of sources that provide guidance on defining a relevant market, and agreed that they were reliable and appropriate; yet Bergman did not follow any of these sources. For example, Bergman's report cites a textbook, "Valuing a Business," which also provides guidance on how to conduct a proper market analysis. Ex. 6 at 261; *see also* Bergman Report ¶ 277 n.366. The author of the textbook states that, "[i]n conducting research on the subject company's industry, the analyst should consider a variety of sources to obtain as broad a view of the industry as possible." Ex. 6 at 261; *see also* Bergman Tr. 42:18-43:3. When shown this sentence, Bergman stated, "[redacted]" *Id.* at 43:7-9. Bergman was also shown the *Litigation Services Handbook*, which provides that, "[m]arket analysis often focuses on the collection of quantitative data about supply and demand, buyers and sellers, competitors, and other participants in a particular marketplace," including "the number or concentration of competitors in a particular market or computation of the market share of each participant …." Ex. 7 at ch. 2, p. 8; Bergman Tr. 43:24-45:03. Bergman testified that "[redacted]" (*id.* at 47:5-6), even though his two-player market methodology fails to take into account other competitors. Notably, Bergman could identify no source anywhere that ever defined a two-player market between Slither.io and Snake.io. *Id.* at 39:22-41:4.

Bergman uses his two-player market theory as the anchor to calculate disgorgement of Snake.io's in-app revenue that would have supposedly gone to Slither.io but for Kooapps' alleged

trademark infringement (Bergman Report ¶ 90), trademark dilution (*id.* ¶ 114), trade dress infringement (*id.* ¶ 136), and false advertising (*id.* ¶ 159). Additionally, Bergman opines that the entirety of Kooapps' business development revenue, [redacted], is subject to disgorgement because [redacted]" *Id.* ¶¶ 91-92.[4] Bergman says that this opinion "[redacted] *Id.* ¶ 92.

Bergman also purports to calculate actual damages based on "[redacted]" *Id.* ¶ 173. Bergman thus relies on his two-player market theory for his actual damages calculation as well. Bergman Tr. 238:12-15.

### 2. Lost Profits Opinion

Bergman seeks to tether [redacted] to conduct by Kooapps, opining that Lowtech made [redacted]. His sole

[4] Bergman's opinion that Kooapps must disgorge its profits from Apple Arcade is particularly perplexing considering that [redacted] *See* Ex. 8 (May 27, 2022 email in which [redacted].

source is his discussions with his client Howse, whose self-interest is evident. Bergman Report ¶ 174 nn.309, 311.

According to Bergman's portrayal of events, which is essentially Howse's portrayal of events, "[redacted]" *Id.* ¶ 174. Bergman opines that, [redacted] *Id*. He then maintains that **"**[redacted]" and "[redacted]" *Id.* Bergman further concludes that "[redacted]" *Id.* ¶ 175.

Notably, Bergman disregarded (without analysis) a range of alternate explanations for Lowtech's decision to [redacted]. ***First***, Lowtech made that decision *before* it discovered Kooapps' use of the allegedly infringing Snake.io logo, so the use of the allegedly infringing logo could not have influenced Lowtech's decision.[5] ***Second***, [redacted] started long before the decision to [redacted] and long before any damages period began. In fact, [redacted]. Expert Report of Carrie Distler ("Distler Report") ¶¶ 35-37 (Ex. 10). ***Third***, while Bergman

[5] *See* Ex. 9, Supp. Response No. 10 ("Lowtech became aware of Kooapps' use of the infringing Snake.io mark when searching for '.io games' on the Apple App Store in December 2020."); *see also* Bergman Tr. 259:12-19 ([redacted]).

claims that "[redacted]" (Bergman Report ¶ 174), [redacted] In fact, [redacted]. *Id.* at Schedule 6.1 at 2, Schedule 6.2 at 2. Bergman has no explanation for how to square [redacted]

Additionally, Bergman provides charts that show [redacted]" but those charts include data for both iOS and Android. *Id.* ¶¶ 73-74. While Lowtech decided to [redacted]. *See* Distler Report ¶ 41. It simply does not make sense that Lowtech would not have [redacted] if it was impacted by Kooapps' purported actions on both platforms.

Lastly, Howse's true motivation for his decision to [redacted] is revealed in electronic correspondence, which Bergman blatantly disregards. For example, in May 2021 email correspondence between Howse and [redacted], Howse comments:

> [redacted]

Ex. 11 (emphasis added).[6] In posts on the social media Discord platform in December 2024 and

---

[6] When presented with this email at his deposition, Howse stated, [redacted] May 7, 2025 Deposition of Steven Howse at 119:4-8 (Ex. 12). Either Howse lied in the email or at his deposition; Howse's lack of truthfulness should have been a red flag to Bergman.

February 2025, Howse states, [redacted] (Ex. 13) and [redacted] (Ex. 14). As Howse reveals in the above correspondence, [redacted]

**3. Lost Enterprise Value Opinion**

Bergman augments his actual damages calculation by adding lost enterprise value, which [redacted] Bergman Report ¶ 227. Bergman uses a revenue multiple of three and multiplies that by Lowtech's supposed lost revenue of approximately [redacted], arriving at a lost enterprise value calculation of [redacted] *Id*. ¶¶ 232-33.

**4. Additional Opinions Lacking Methodology**

Consumer Reviews of Snake.io: Throughout his opening report, Bergman offers interpretations and opinions of third-party online reviews of Snake.io, yet he lacks any expertise on this topic and arrives at these opinions with no methodology at all. *See id.* ¶ 52 (listing ***eight*** consumer reviews to support his opinion that [redacted]; ¶ 53 (summarizing ***forty*** consumer reviews); ¶ 56 (citing ***fifteen*** Snake.io consumer reviews to opine that "[redacted]).

Word Mark Damages: Bergman relies on the logo survey conducted by Butler to calculate disgorgement and actual damages for Lowtech's trademark infringement and trademark dilution claims, and opines that that the survey supports disgorgement and actual damages arising from Kooapps' use of the "slither" and "slither.io" word marks. *Id.* ¶¶ 80, 104. However, Butler's logo

survey tests confusion associated with Kooapps' use of the Snake.io logo *only*, but does *not* measure confusion associated with any use of the word marks. *See generally* ¶¶ 63-65. In her deposition testimony, Butler confirmed that she did not run a survey related to confusion based on Kooapp's alleged use of the word "Slither." Deposition Transcript of Sarah Butler at 18:6-19:13 (Ex. 15). And Bergman too conceded this point at his deposition. Bergman Tr. 244:8-13 ([redacted]).

<u>Actual Damages for False Advertising</u>: Bergman opines that "[redacted]" *Id.* ¶ 222. He does not calculate actual damages for false advertising, claiming that he "[redacted]" *Id.* ¶ 226. Nevertheless, he still opines that "[redacted]" (*id.* ¶ 224) and "[redacted]" (*id.* ¶ 226).

## III. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert opinion testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. District court judges must act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579, 597 (1993). "[T]he expert's testimony must be reliable at ... every step or else it is inadmissible. 'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354-55 (5th Cir. 2007) (citation omitted).

## IV. ARGUMENT

### A. Bergman's Two-Player Market Opinion Should Be Excluded

Bergman's two-player market definition, which is a predicate for his damages and disgorgement opinions (*see, e.g.*, Bergman Tr. 238:12-15), should be excluded, as it is unreliable and unsupported. The premise for his two-player market opinion is based solely on a blinkered analysis of data from Slither.io and Snake.io alone, without any review of any data from any other market participants, and in stark departure from the methodological standards recognized by both industry sources as well as Bergman himself.

Experts must independently investigate the information given to them and any underlying assumptions used in their opinion and apply that information based on the expert's specialized knowledge. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming damages expert's exclusion for failure to conduct an independent analysis of sales figures provided by plaintiff's counsel).[7] "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a

---

[7] *See also Exume v. United Cargo Logistics, LLC*, 2025 WL 1688329, at *5 (E.D. Tex. June 16, 2025) (excluding expert opinions on lost wages and earning capacity because expert relied solely on interview with plaintiff and failed to conduct an independent analysis); *Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (excluding expert testimony on lost profits where expert "simply accepted" the plaintiff's "projection" on increases in patients with diabetes without conducting any independent research); *Stinson Air Ctr., LLC v. XL Speciality Ins. Co.*, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (excluding expert testimony where expert based opinions on representations of interested party and not on independent review of ordinary sources of financial analysis); *JRL Enters., Inc. v. Procorp*

district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (approving exclusion of expert for ignoring pertinent facts). Moreover, "[c]ourts have often found that an expert's opinion is inadmissible under Rule 702 and *Daubert* where the expert's opinions are based upon unjustified assumptions and where there is no evidence that the expert considered other market factors which may have caused the losses in question." *Sigur v. Emerson Process Mgmt.*, 2007 WL 1893632, at *5 n.13 (M.D. La. Apr. 25, 2007). In determining whether an expert's methodology passes muster under *Daubert*, courts have considered whether the expert's methodology has been subjected to peer review or publication, whether the potential rate of error has been determined or applied, and whether the theory has been generally accepted. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

By defining a two-player market without analyzing data for any other market participant, and disregarding recognized methodological standards for how to define a relevant market, Bergman falls short and his two-party market opinion must be excluded. Indeed, courts exclude damages experts for similar deficiencies. For example, in *Sigur*, the court excluded the testimony of a damages expert in part because the expert did not present "any evidence indicating that the impact of market factors, such as Hurricanes Katrina and Rita ... were considered in the underlying causal analysis." 2007 WL 1893632, at *5. Even "if such market factors were not considered in

*Assocs., Inc.*, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (excluding expert testimony on lost profits where expert failed to conduct any independent research to determine whether the projections from the plaintiff were accurate or reliable); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 301 F. Supp. 2d 612, 623-24 (S.D. Tex. 2003) (excluding expert testimony as unreliable where "[t]he testimony that is relied upon to support [the expert's] assumptions are the self-serving testimony of the plaintiffs, which fails to establish a basis for their claim of loss sales"), *aff'd*, 131 F. App'x 450 (5th Cir. 2005).

determining causation, [the plaintiff] has not offered any explanation as to why, under generally accepted methodology, it was permissible for the [proffered expert] to assume that such factors did not affect [the plaintiff's] sales." *Id.*

Similarly, in *Prepaid Wireless Services, Inc. v. Southwestern Bell Wireless, Inc.*, 2002 WL 34367328, at *3 (S.D. Tex. July 23, 2002), the court found the expert's damages analysis "uncertain and unreliable," in part, because he did not "account for other factors in Plaintiff's demise" which, in turn, prevented "the fact-finder from determining the extent to which Defendant's actions—rather than other elements—caused Plaintiff's alleged injuries." In excluding the expert's damages opinion, which included as a topic the "market share of potential new markets for Plaintiff," the court reasoned that the expert "did not, for example, analyze the effects of increased competition prices in the prepaid wireless industry." *Id*. at *2, *4. The court noted that, in the Fifth Circuit, "an expert's failure to consider, or control for, other explanatory variables is fatal to the reliability of his testimony." *Id*. at *3.

Blindly relying on Howse's assertion that the market is limited to Slither.io and Snake.io, Bergman failed to "consider, or control for, other explanatory variables" for Slither.io's decrease in downloads and MAUs, which is "fatal to the reliability of his testimony." *Id.* As the expert in *Sigur* ignored the impact of market factors on the plaintiff's sales and the expert in *Prepaid Wireless Services* ignored the effects of competitors on the plaintiff's profits, Bergman ignores the effects of competitors other than Snake.io on Slither.io's downloads and MAUs.

Tellingly, during his deposition Bergman dropped the guise about a two-party market and admitted that the relevant market would include, not only Snake.io and Slither.io, but other snake-like and hypercasual games that users could choose to play:

[redacted]

[redacted]

Bergman Tr. 149:10-18 (emphasis added); *see also id.* at 153:6-8 ("[redacted]").

In sum, this Court should exclude Bergman's two-player market opinion because it is not the result of a reliable market analysis and is in conflict with all the available evidence. The result of this exclusion will be the exclusion of Bergman's further opinions that rely on his faulty two-party market theory as reflected in the Proposed Order.

**B. Bergman's Lost Profits Opinion Should Be Excluded**

Bergman's lost profits opinion should be excluded as it is unsupported and based solely on the false assumption that Lowtech made the decision to [redacted]. As with his two-player market opinion, Bergman's lost profits opinion relies on representations by his client Howse that are flatly contradicted by all the available evidence.

As discussed earlier, experts must independently investigate the information given to them and apply that information based on their specialized knowledge. *See* cases discussed *supra* at 11-12, n.7.[8] Additionally, experts must consider reasons other than the defendant's actions that may account for the plaintiff's losses. *See* cases discussed *supra* at 12-13.

[8] Moreover, Bergman's testimony as to the motivation behind Howse's decision to [redacted] relates to Howse's state of mind, and is, therefore, inadmissible on that basis. *See Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("[A]n expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind."); *Huawei Techs. Co. v. Huang*, 2019 WL 2077821, at *4 (E.D. Tex. May 9, 2019) ("[A] trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury.") (citations omitted).

Bergman's lost profits opinion fails to abide by both of these requirements: he accepts at face value Howse's purported reason for [redacted], without conducting an independent analysis or considering evidence of alternative explanations for the decision to [redacted]. Indeed, had Bergman conducted an independent analysis into Howse's proffered explanation, he would have discovered that it is controverted by the evidence discussed above: (1) Howse admits in electronic communications that he [redacted], and (2) [redacted]

Courts in the Fifth Circuit repeatedly exclude testimony of experts who rely on no more than a party's say-so without conducting any independent evaluation on such sources. *See* cases cited *supra* n.7. For example, in *Exume*, the court excluded the plaintiff's expert opinion on lost wages and earning capacity, finding that the expert "takes Plaintiff's statement at face value, basing his entire methodology on the mere fact that Plaintiff herself claims that she will lose $15,000 per year" due to the personal injury at issue. 2025 WL 1688329, at *5. The court also took issue with the fact that the expert's opinion that the plaintiff will lose $15,000 per year was "wholly inconsistent with the evidence on the record." *Id.* at *6. Specifically, the paystubs from after the injury and a social security earnings statement from before the injury showed that the plaintiff would be losing far less than $15,000 per year due to the injury. *Id.* "While an expert can rely on what an interested party tells him, he cannot forgo his own independent analysis and exclusively rely on the interested party's information to form his opinion"—which is what Mr. Begman does here in relying solely on his discussions with Howse. *Id*. at *5. As the expert did in *Exume*, Bergman ignores contradictory evidence that shows that Howse's decision to [redacted]

[redacted], but because Howse [redacted].

Rule 702 and *Daubert* do not allow an expert witness to act as a party's mouthpiece, and so Bergman's lost profits opinion should be excluded.

**C. Bergman's Lost Enterprise Value Opinion Should Be Excluded**

Bergman's lost enterprise value opinion should be excluded as improper as a matter of law. Bergman's enterprise value opinion is flawed because lost enterprise value is only a proper damages measurement when there is a total loss of business, which is not the case here. "Lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed." *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 569 (S.D. Tex. 2011), *aff'd*, 716 F.3d 867 (5th Cir. 2013); *see also Opal Labs Inc. v. Sprinklr, Inc.*, 2021 WL 7159869, at *2 (D. Or. Nov. 8, 2021) (excluding testimony of damages expert because, among other reasons, "the Court cannot conclude that diminution of value is the appropriate measure of damages in this case" and noting that "[c]ircuit courts, district courts, and scholars have concluded that diminution of value is an appropriate measure of damages where a business is completely destroyed"); *Stanacard, LLC v. Rubard LLC*, 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) (excluding testimony of damages expert regarding "losses related to the impairment of … business value" where the plaintiff did not contend its "business value ha[d] been completely or almost completely destroyed by [the defendant's] misappropriation"); *Nordetek Env't, Inc. v. RDP Techs., Inc.*, 862 F. Supp. 2d 406, 417-18 (E.D. Pa. 2012) (excluding testimony of damages expert and finding diminution of value is appropriate only where a business is destroyed suddenly or over a "slow death" scenario). Neither Lowtech nor Bergman claim that Lowtech's business was completely destroyed, and thus lost enterprise value is not available as a form of damages and Bergman's opinion should be excluded.

**D. Bergman's Opinions Utterly Lacking in Any Methodology or Foundation Should Be Excluded**

**1. Bergman's Biased Summary of Consumer Reviews**

Mr. Bergman's statements about consumer reviews of Snake.io should be excluded because biased summaries of evidence are not helpful to jurors. Multiple times throughout his opening report, Bergman opines on consumer reviews of Snake.io to support his opinion that "[redacted]" Bergman Report ¶¶ 52, 56. In total, Bergman recites 63 consumer reviews in his report. *See supra* Part II.A.4.

"[E]xpert testimony is of little value, and should not be admitted, to the extent that it merely synthesizes fact evidence into narrative form." *Escalante v. Creekside Logistics, LLC*, 2019 WL 9135758, at *8 (W.D. Tex. Feb. 12, 2019); *see also United Daughters of the Confederacy v. Nirenberg*, 2018 WL 5114150, at *3 (W.D. Tex. Oct. 18, 2018) (excluding purported expert opinion that simply synthesized facts as not helpful to the jury).

First, like the expert in *Escalante* who applied no expert methodology, Bergman's elementary technique consists solely of [redacted] Bergman Tr. 123:6-14. At no point did Bergman verify the actual identities of, or interview, any reviewer. *Id.* at 132:20-25. Bergman did not engage in any sampling or calculate statistical significance. *Id*. at 126:21-127:14. Instead, he simply selected a handful of reviews out of a bucket of hundreds of thousands of reviews and summarized them in a bullet-point list. *Id.* at 126:2-6; Bergman Report ¶¶ 52-53, 56. Bergman admitted repeatedly in his deposition that his methodology of summarizing consumer reviews to conclude that Snake.io is similar to Slither.io does not require expertise at all:

[redacted]

[redacted]

Bergman Tr. 123:20-124:5 (emphasis added). Similarly, Bergman further testified:

[redacted]

[redacted]

*Id.* at 141:5-17 (emphasis added).

Second, Bergman opines that "[redacted]" *Id.* at 141:1-2. Bergman's observation, however, is a simple inference drawn from his recitation of his version of the facts which "serve[s] only to buttress [the] theory of the case" and "does no more than counsel ... will do in argument …." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d. 531, 551 (S.D.N.Y. 2004) (citation omitted).

Finally, Bergman's summary of consumer reviews does not assist the jury in understanding his damages calculations. Expert testimony based on common sense is not helpful to the jury. *See Tendeka, Inc. v. Glover*, 2015 WL 2212601, at *25 (S.D. Tex. May 11, 2015) (excluding expert opinion about a website change based on a common-sense assumption).

Bergman contends that his summation of reviews qualitatively supports the reasonableness of Butler's surveys, the confusion rates of which he uses in his damages calculations. Bergman Tr. 137:12-19, 138:5-22. However, like the expert in *Tendeka* who relied on common-sense assumptions, Bergman cannot cite any support for his methodology of summarizing consumer reviews because, in his own words, it "seem[ed] like common sense …." *Id.* at 140:7.

**2. Bergman's Opinions Related to the Word Marks Should Be Excluded**

Bergman bases his opinions for damages and disgorgement relating to trademark infringement on Butler's logo survey, but that survey only measured confusion attributable to Kooapps' use of the Snake.io *logo*, and did not measure confusion attributable to any use of the "slither" and "slither.io" word marks. Thus, Bergman did not perform any damages calculations, apportion damages, or use any sources relating to Kooapps' use of the slither word marks. Because Bergman's fails to consult any sources relating to Kooapps' use of the slither word marks, his opinions related to these word marks are based on insufficient data and subject to exclusion. *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (affirming exclusion of expert opinion that relied on false assumptions rebutted by "all the available evidence" and observing that opinions based on "insufficient, erroneous information" fail the reliability standard). Furthermore, Bergman's failure to apportion damages to the use of the slither word marks is reason alone to exclude his opinions on trademark infringement and trademark dilution. *See Prepaid Wireless*, 2002 WL 34367328, at *5 (excluding expert testimony where expert did not, among other things, "segregate damages attributable to Defendants' lawful versus unlawful conduct").

**3. Bergman's False Advertising Actual Damages Opinion is Baseless**

Bergman's false advertising actual damages opinion should be excluded because he fails to apply any expert methodology or survey to identify a causal link and estimate monetary relief associated with false advertising. Expert opinions based on speculation, subjective belief, or intuition are excluded because they are not the product of expertise. *See Ashland Chem.*, 151 F.3d at 279 (excluding expert causation opinion because he "cited no scientific support for this theory," resulting in an "analytical gap" between the "opinion and the scientific knowledge and available data advanced to support that opinion"); *Johnson v. Cox*, 2023 WL 4686435, at *14 (N.D. Tex.

July 21, 2023) (excluding expert causality opinion that relied on subjective belief, intuition, and unsupported speculation instead of scientific support and data).

Like the speculating experts in *Ashland Chemical* and *Johnson*, Bergman opines, without support, that "[redacted]" Bergman Report ¶ 224. Bergman never identifies the causal link between Kooapps' alleged false advertisements and the harm to Slither.io, or offers any estimate of monetary relief because he "[redacted]" *Id.* ¶ 226. Nevertheless, based solely on subjective belief and intuition, Bergman remains entirely confident in "[redacted]" *Id.* That is insufficient and unhelpful to the jury.

## V. CONCLUSION

For the reasons stated above, Kooapps requests that the Court exclude Bergman's opinions and testimony regarding Lowtech's damages consistent with this Motion by entering an order in the form proposed by Kooapps.

Dated: October 10, 2025

Respectfully submitted,

By: */s/ Eli B. Richlin*
Eli B. Richlin

Eli B. Richlin (admitted *pro hac vice*)
New York State Bar No. 4861357
erichlin@wsgr.com
J. Ariel Jeong (admitted *pro hac vice*)
New York State Bar No. 5344122
ajeong@wsgr.com
**Wilson Sonsini, Goodrich & Rosati, PC**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800

Joshua A. Baskin admitted (*pro hac vice*)
California State Bar No. 294971
jbaskin@wsgr.com
Chloe Delehanty (admitted *pro hac vice*)
California State Bar No. 333412
cdelehanty@wsgr.com
**Wilson Sonsini Goodrich & Rosati, PC**
Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000

Thomas A. Nesbitt
State Bar No. 24007738
tnesbitt@nesbittlegal.com
**Nesbitt Legal PLLC**
809 West Avenue
Austin, Texas 78701
Phone: (512) 617-5562

*Attorneys for Defendant and Counterclaim-Plaintiff Kooapps Inc., and Defendants Jonathan Chang and Chun-Kai Wang*

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on October 8, 2025 counsel for the parties met and conferred regarding the issues that form the basis of this motion, but were unable to reach resolution.

*/s/ Eli B. Richlin*
Eli B. Richlin

*Attorneys for Defendant and Counterclaim-Plaintiff Kooapps Inc. and Defendants Jonathan Chang and Chun Kai Wang*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 10, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this motion and all supporting declarations through the Court's CM/ECF system.

*/s/ Eli B. Richlin*
Eli B. Richlin

*Attorneys for Defendant and Counterclaim-Plaintiff Kooapps Inc., and Defendants Jonathan Chang and Chun-Kai Wang*