**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | |
|---|---|
| LOWTECH STUDIOS, LLC,<br><br>        Plaintiff,<br>    v.<br><br>KOOAPPS LLC, JONATHAN CHANG, and CHUN-KAI WANG,<br><br>        Defendants.<br><br><br>KOOAPPS INC.,<br><br>        Counterclaim-Plaintiff,<br>    v.<br><br>LOWTECH STUDIOS, LLC and STEVEN HOWSE,<br><br>        Counterclaim-Defendants. | CASE NO.: 1:23-cv-1437-DAE |

**KOOAPPS INC.'S MOTION TO PRESERVE**
**"ATTORNEYS' EYES ONLY" DESIGNATIONS**

Kooapps Inc. ("Kooapps") respectfully moves pursuant to the Agreed Confidentiality and Protective Order (Dkt. No. 29, the "Protective Order") and Federal Rule of Civil Procedure 26(c) to preserve certain "Attorneys' Eyes Only" ("AEO") designations challenged by Lowtech Studios Inc. ("Lowtech") and Steven Howse ("Howse").  Following attempts to resolve this dispute, Kooapps seeks continued AEO designation for only a limited set of materials: portions of deposition transcripts, expert reports, and filings in this case (the "Disputed Materials").

Kooapps' AEO designations in the Disputed Materials[1] are narrowly tailored to protect its proprietary trade secrets and financial information.  Their disclosure directly to Lowtech and Howse would put Kooapps at a competitive disadvantage.  The status quo does not prejudice Lowtech or Howse, for their counsel has full access to these materials for purposes of this litigation.  Kooapps' concerns are justifiably heightened given that Howse has previously misused information he received under the Protective Order.  For these reasons, the Court should grant Kooapps' Motion.

## I.    FACTUAL BACKGROUND

### A.    The Genesis of The Protective Order

The Parties in this action are competitors.  They both own "snake" style mobile games. Therefore, the Parties agreed to a Protective Order that would limit direct Party access to competitively sensitive information under an AEO designation.  *See* Dkt. 28.

On May 24, 2024, the Court entered the parties' stipulated Protective Order.  Dkt. 29.  The Protective Order permits designation of materials as either "Confidential," "For Counsel Only," or "AEO."  *Id.* at Section 1.  The Protective Order states that AEO designations "shall be reserved

---

[1] The Disputed Materials and a list of the AEO designations which Kooapps seeks to preserve are provided in the attached Exhibits ("Ex.") to the Declaration of Chloe M. Delehanty.

for information that is believed to be unknown to the opposing party or parties" and "***includes, but is not limited to, product formula information, design information, non-public financial information, pricing information, customer identification data, and certain study methodologies***." *Id.*, Section 3(b) (emphasis added).

In accordance with the Protective Order, Kooapps produced tens of thousands of documents, provided deposition testimony, and made source code available for Lowtech's attorneys to review at the Court's direction.  Delehanty Decl. ¶ 2.  Throughout discovery, both Parties made extensive use of the AEO designation.  *Id.* ¶ 3.  While the Protective Order establishes the procedure for challenging a designation (*see* Dkt. 29, Section 11(a)), neither party objected to any of the other party's AEO designations during the entire discovery period.  Delehanty Decl. ¶ 3. Indeed, even following fact discovery, Lowtech and Howse were able to engage and work with experts, produce expert reports, depose Kooapps' experts, and fully brief summary judgment and Daubert motions, all without formally challenging any of Kooapps' AEO designations. *Id.* ¶ 4.

### B.    Recent Dispute Regarding Kooapps' Confidentiality Designations

This dispute arose only after the parties completed briefing on dispositive motions.  In January 2026, Kooapps reached out to Lowtech to discuss engaging a mediator, in compliance with the Court's ADR requirements.  *Id.* ¶ 5; W.D. Tex. LR CV-88.  Lowtech responded that, as a precondition to mediation, Howse would need direct access to Kooapps' AEO materials, and identified various deposition transcripts, expert reports, and court papers.  Delehanty Decl. ¶ 5.

Kooapps' original designations had been made deliberately and in good faith under the standards set forth in the Protective Order.  Nevertheless, Kooapps agreed to re-review these designations to try and resolve a discovery dispute and move towards mediation.  *Id.* ¶ 6. Following that review, Kooapps agreed to de-designate and/or downgrade numerous documents and produced new copies of the documents with AEO material redacted.  *Id.*

Yet Lowtech has remained unsatisfied.  Throughout April, Lowtech continued to raise serial objections to the remaining AEO information.  *Id.* ¶ 7.  On May 12, 2026, the parties met and conferred.  *Id.*  Following this meet and confer, Kooapps agreed to down-designate even more information in an effort to reach a resolution.  *Id.* ¶ 8.  But Lowtech raised the stakes, pulling back from work to resolve the dispute without court intervention, declaring that the parties had reached impasse, and that Kooapps would need to file a motion by today's date.[2]  *Id.*

### C.    The Disputed Designations

Kooapps has not withheld any of the Disputed Materials in full, and indeed Howse already has access to redacted versions of them.  Kooapps maintains only limited AEO designations of specific information, which fall in the following categories: Kooapps' non-public financial and pricing information, business partnerships, marketing strategy, product formula information such as technical documentation related to proprietary game features, game design information, user retention and acquisition strategy and studies, and technical optimizations.  *See* Ex. A (describing redacted material).  This highly-sensitive proprietary information regarding Kooapps and its Snake.io game is not available outside the company, and disclosure to a competitor would subject Kooapps to competitive harm.  Chang Decl. ¶ 3.

### D.    Howse's Documented Misconduct

Howse has a documented record of misconduct that heightens confidentiality concerns here even beyond providing confidential and proprietary information to a direct competitor.  Howse engaged in defamation, disparagement, and tortious interference with Kooapps' business.  *See* Dkt.

---

[2] Lowtech further stated that while it was withdrawing certain challenges for the present, it reserved the right to reassert those challenges at a later date. Kooapps rejected this approach as impractical, burdensome, inefficient, and prejudicial, and informed Lowtech that it would not accept future attempts to reassert challenges Lowtech had withdrawn.  Delehanty Decl. ¶ 9.

73. Discovery in this action has revealed Howse's disturbing remarks about Kooapps and its principals.  For example, Howse stated that "my goal was to destroy the company that owns Snake.io," and "I expect them to dissolve the company and flee to China . . . ." *See* Delehanty Decl. Ex. Y (Howse Tr.) at 231:9, 232:11-12.  He also claimed that Kooapps' employees "will probably embezzle all company funds to themselves with crypto currency transfers and flee the country before the court date."  *Id.*

Howse has already used Classified Information improperly.  When he sat in on the confidential deposition of Kooapps' CEO, Chun-Kai Wang, he learned the identity of one of Kooapps' business partners.  He then repeatedly contacted that contractor outside of this litigation and demanded that it provide documents and answer questions about its confidential business arrangement with Kooapps.  Kooapps only learned about this from the contractor itself.

Howse had sanctions issued against him for "intentionally deleting relevant evidence," whereby the Court found "Howse's explanations for his deletion of the Discord posts [to] strain credulity."  Dkt. 140 at 8-9 (report and recommendation); *see also* Dkt. 173 (Order adopting report and recommendation), and Kooapps is wary of providing its most competitively sensitive information to Howse—as opposed to his attorneys.

## II.    LEGAL STANDARD

Pursuant to Rule 26(c)(1)(G), courts have broad discretion to enter and enforce protective orders "to protect a party from, among other things, revealing certain commercially sensitive information."  *Frantz Design, Inc. v. Diamond Orthotic Lab., LLC*, 2020 WL 10313920, at \*2 (W.D. Tex. Aug. 13 2020) (quoting *Raytheon Co. v. Indigo Systems Corp.*, 2008 WL 4371679, at \*2 (E.D. Tex. Sept. 18, 2008)).  Disclosure may be prohibited where, for example, "the information has commercial value and the parties are competitors.  *Id.* (citing Manual for Complex Litigation,

4

Third § 21.432 n.146).  The party seeking protection bears the burden to show good cause, but the district court retains substantial discretion in determining both whether protection is warranted and the form that protection should take.  *Su Min Kim v Honda Canada, Inc.*, 2020 WL 337966, at *3 (E.D. Tex. Jan. 21, 2020).

### III.    ARGUMENT

#### A.    The Protective Order Expressly Authorizes AEO Treatment for Highly-Sensitive Commercial Information

The Protective Order expressly permits AEO designations when the sensitivity of the designated information justifies limiting disclosure, including, for example, "product formula information, design information, non-public financial information, pricing information, customer identification data, and certain study methodologies."  *Supra* at 1-2 (citing Dkt. 29, Section 3(b)). These restrictions are narrowly tailored.  The Protective Order does not bar use of AEO information in this case; instead, it limits disclosure to counsel, approved experts, the Court, and other authorized recipients, while prohibiting disclosure to the opposing party itself.  Dkt. 29, Section 2 (identifying "Qualified Persons" for whom disclosure of AEO material is permitted). This type of restriction is standard in cases such as this, where multi-tiered confidentiality is warranted because the opposing parties are competitors.  *Blanchard & Co. v. Barrick Gold Corp.*, 2004 WL 737485, at *7 (E.D. La. Apr. 5, 2004).

The Disputed Materials reveal non-public internal business information that is not generally known outside of Kooapps, and which is not obtainable through lawful public means. They include information concerning internal financial metrics, business strategies, product development information, and other commercially sensitive matters.  Disclosure of such information to Kooapps' direct competitor would create competitive risks the Protective Order was designed to prevent.  *See, e.g.*, *Frantz Design*, 2020 WL 10313920, at *2 (citing Manual for

Complex Litigation, Third § 21.432 n.146) (disclosure to clients may be prohibited where, for example, "the information has commercial value and the parties are competitors" or, alternatively, the operative protective order might "create a special class of highly confidential documents that only attorneys and non-client experts may view").

### B.     The Disputed Materials Independently Satisfy Rule 26(c)(1)(G)

The disputed AEO designations should be preserved because the Protective Order authorizes AEO treatment and the information at issue falls squarely within Rule 26(c)(1)(G).

**Non-Public Financial and Pricing Information.**    Documents reflecting proprietary monetization structure/strategy, specific revenue and performance metrics, and advertising metrics constitute highly sensitive commercial information.  *See C.A. Muer Corp. v. Big River Fish Co.*, 1998 WL 488007, at *3-4 (E.D. Pa. Aug. 10, 1998) (protective order restricting access to financial and marketing information by competitor's employees).

The disputed AEO designations in this category include, for example, specific information on Kooapps' marketing and influencer costs, payments, and metrics (Zagal Tr. 80:5-8 (Ex. J), Bergman Resisting Report at 17 ¶ 55 (Ex. O)), website revenue (Chang Tr. at 191:7 (Ex. E)), profits and profit margins (Distler Rebuttal Report at 59 ¶ 108; *id.* at 61 ¶ 112 (Ex. L)), and monetization strategy for Snake.io (Davies Tr. at 36:1-20, 44:10-45:8 (Ex. F)).  Kooapps does not disclose this information publicly.  Chang Decl. ¶ 6.  This information reveals how Kooapps measures performance, allocates resources, and evaluates commercial opportunities.  *Id.* Disclosure of such information to Kooapps' adversary would create a clear risk of competitive injury by exposing Lowtech and Howse to information that is not otherwise available in the market, including about Kooapps' profitability and internal financial priorities.  *Id.*

**Confidential Details of Business Relationships.**    Documents reflecting information derived from confidential agreements with third parties qualify as competitively sensitive

information.  *See Oncology Tech, L.L.C. v. Elekta, Inc.*, 2013 WL 12169359, at *7 (W.D. Tex. Feb. 5, 2013) ("It is reasonable for companies to take precautions to prevent the disclosure of sensitive information to competitors, such as the specific provisions, terms, and language of their agreements, that is, information that reasonably impact competitive positions in the marketplace.").

The AEO designations in this category seek to protect information derived from Kooapps' confidential agreements and partnerships with third parties, including direct quotations of the terms of its agreements with various business partners (*e.g.*, Distler Rebuttal Report at 43-44 ¶¶ 75-77 (Ex. L)), details about compensation or fees paid pursuant to those agreements (*e.g.*, *id.* at 46 ¶ 83), and Kooapps' obligations thereunder (*e.g.*, Bergman Opening Report at 44 ¶ 101 (Ex. M)).  Chang Decl. ¶ 7.

Howse could use the details of Kooapps' business agreements and business development strategies to compete unfairly with Kooapps and/or interfere with Kooapps' existing agreements (as he has already done).  *Id.*

**Product Formula Information.**  Documents reflecting Kooapps' proprietary implementation of game mechanics are "product formula information" as contemplated under the Protective Order.  The Disputed Materials in this category reflect information regarding or derived from Kooapps' proprietary technical systems, tools, and scripts used to optimize the Snake.io game.  *Id.* ¶ 8.  Examples include technical documentation related to multiplayer features and updates (Zagal Opening Report at 20 and n.133 (Ex. Q)), explanations of multiplayer functionality releases through live system updates (Wang 30(b)(6) Tr. at 131:2-9 (Ex. C)), and utilization of multiplayer features and access (Myers Tr. at 88:17-90:7 (Ex. I).

Kooapps maintains the confidentiality of this information and restricts access to it in the ordinary course of business because public access would reveal how its games are built, maintained,

and optimized.  Chang Decl. ¶ 8.  Even so, Lowtech and Howse demand its production straight into their hands.  Permitting disclosure of this information to Howse would competitively harm Kooapps because it could allow reverse engineering of its development approaches and use of implementation details for a competitive game.  *See Blanchard*, 2004 WL 737485, at *10 ("ample precedent exists" for such procedures "when there is some risk that a party might use the information . . . to gain a competitive advantage over the producing party") (citation omitted); *see also Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1998 WL 186728, at *2 (E.D. La. Apr. 17, 1998) (citing numerous cases).  Even though Lowtech had abandoned its game for years, after commencement of this lawsuit in 2024, Lowtech began intermittently releasing competitive features on Slither.io.  These features are similar to those already offered in Snake.io, such as server selection to play with friends, music, different backgrounds, and running live events.  Chang Decl. ¶ 9.  The misappropriation of competitive information is precisely what Rule 26(c)(1)(G) is intended to prevent.

**Design Information and Study Methodologies.**  Documents reflecting Kooapps' internal A/B testing models for its game features, icon designs, and technical optimizations fall within Rule 26(c)(1)(G)'s reference to confidential "research" and "development" information.  The disputed AEO designations in this category include details of internal A/B test processes and results.  *See, e.g.*, Wang Tr. at 150:19, 151:2-3, 152:16, 152:20, 153:9 (Ex. B).

Information of this type should not be made available to Lowtech and Howse because disclosure would reveal proprietary know-how, future product direction, and Kooapps' internal development priorities before they are made public and would give Lowtech an opportunity to unfairly compete with Kooapps based on such access.  Chang Decl. ¶ 10.

### C.      Good Cause Exists to Preserve Kooapps' AEO Designations.

Good cause exists to preserve Kooapps' AEO designations because the information is

commercially and competitively sensitive.  Disclosure of such information to Howse would cause concrete harm to Kooapps, particularly here where the risk of improper disclosure is heightened given that Howse has proven to be untrustworthy and a bad actor.  Lowtech could use Kooapps' internal financial and product-related information for its business strategy, pricing and advertising model, development priorities, and negotiations, among other business decisions.  For example, Howse could use the highly-sensitive information to enable Lowtech to more closely compete with Kooapps by adopting its proprietary advertising monetization strategy, expanding its game portfolio by mimicking Kooapps' game development and user acquisition strategies, using Kooapps' specific revenue and performance metrics to improve its competing game, and using the details of Kooapps' business agreements and business development strategies to compete unfairly with Kooapps or interfere with Kooapps' existing business partnerships.

Kooapps has spent millions of dollars to develop Snake.io and A/B test game features, icon designs, and technical optimizations.  Chang Decl. ¶ 10.  Rather than undertaking these comprehensive and time-consuming efforts, Howse could use Kooapps' proprietary design documents and information to copy the game mechanics and unique features of Snake.io to improve its own, Slither.io game or build an entirely new game.

These risks are sufficient to justify AEO treatment because the Protective Order already provides a narrowly tailored means of disclosure: retained counsel, experts, consultants, the Court, and other litigation support personnel may still access and use the information in motion practice and trial preparation.  Dkt. 29, Section 2(a).  Moreover, Howse already has access to redacted versions of the Disputed Materials.  Plaintiff therefore suffers no prejudice from maintaining the limited AEO designations in the Disputed Materials, while Kooapps would likely face substantial harm from disclosure to its direct competitor.

9

**D.**     **A Less Restrictive Designation Would Not Adequately Protect Kooapps' Interests.**

Reclassifying the Disputed Materials from AEO to a lower confidentiality tier would defeat the purpose of the Protective Order.  De-designation of the Disputed Materials would create a competitive risk that cannot be undone once disclosure occurs.  There is ample justification to accord the relief Kooapps seeks, particularly given Howse's proven misconduct.  *Supra* at 3-4.

These concerns are precisely why AEO designations exist and why the Protective Order distinguishes between ordinary confidential information and highly-sensitive commercial information.  Preserving the AEO designations in the Disputed Materials strikes the proper balance.  It is the narrowest practical mechanism to protect Kooapps' legitimate commercial interests while allowing Lowtech's counsel and experts to fully analyze and use the materials in this litigation.  *See Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 247 (D. Kan. 2010) (noting that the AEO designation "constitutes a practical and cost-effective way to protect [the parties'] respective interests in their most sensitive information from a competitor, while complying with their obligations for discovery").

**IV.     CONCLUSION**

For the reasons stated above, Kooapps respectfully requests that the Court grant Kooapps' motion and enter an order preserving Kooapps' AEO designations in the Disputed Materials under the Protective Order.

Dated: June 5, 2026                              Respectfully Submitted,

                                                  By: */s/ Eli B. Richlin*
                                                  Eli B. Richlin (*pro hac vice*)
                                                  New York State Bar No. 4861357
                                                  erichlin@wsgr.com

J. Ariel Jeong (*pro hac vice*)
New York State Bar No. 5344122
ajeong@wsgr.com
**Wilson Sonsini Goodrich & Rosati, PC**
31 W 52nd St Fifth Floor
New York, NY 10019

Joshua A. Baskin (*pro hac vice*)
California State Bar No. 294971
jbaskin@wsgr.com
Chloe Delehanty (*pro hac vice*)
California State Bar No. 333412
cdelehanty@wsgr.com
**Wilson Sonsini Goodrich & Rosati, PC**
Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000

Thomas A. Nesbitt
State Bar No. 24007738
tnesbitt@nesbittlegal.com
**Nesbitt Legal PLLC**
809 West Avenue
Austin, Texas 78701
Phone: (512) 617-5562

*Attorneys for Defendant and Counterclaim-*
*Plaintiff Kooapps Inc., and Defendants*
*Jonathan Chang and Chun-Kai Wang*

## CERTIFICATE OF CONFERENCE

Counsel certifies that, in accordance with the protective order and local rules, the parties conferred in good faith regarding the challenged AEO designations but were unable to reach agreement, necessitating this motion.

By: */s/ Eli B. Richlin*

*Attorneys for Defendant and Counterclaim-Plaintiff Kooapps Inc., and Defendants Jonathan Chang and Chun-Kai Wang*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 5, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and supporting document through the Court's CM/ECF system.

By: */s/ Eli B. Richlin*

*Attorneys for Defendant and Counterclaim-Plaintiff Kooapps Inc., and Defendants Jonathan Chang and Chun-Kai Wang*

13