IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LOWTECH STUDIOS, LLC, | § | NO. 1:23-CV-1437-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| KOOAPPS, LLC, JONATHAN CHANG, and CHUN-KAI WANG, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

ORDER GRANTING IN PART AND DENYING IN PART
THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Before this Court is Plaintiff, Lowtech Studios, LLC ("Lowtech") and Counterclaim Defendant's, Steven Howse ("Howse") (collectively "Plaintiffs") Motions for Summary Judgment filed on November 14, 2025. (Dkt. # 183-2.) Also before this Court is Defendants and Counterclaim Plaintiffs' Kooapps, LLC ("Kooapps"), Jonathan Chang ("Chang"), and Chun-Kai Wang ("Wang") (collectively "Defendants") Motion for Summary Judgment filed on December 5, 2025. (Dkt. # 198-4.) Additionally, Lowtech's Motions to Exclude filed on October 14, 2025, and Kooapps's Motions to Exclude filed on October 10, 2025 are before the Court. (Dkt. # 154-1; 155-4; 157-5; 158; 142; 143; 144.) The Court finds these matters suitable for disposition without a hearing. After careful consideration of the filings, the Court—for the reasons that follow—**GRANTS IN**

**PART AND DENIES IN PART** Plaintiffs' and Defendants' respective Motions for Summary Judgment. (Dkts. ## 183-2; 198-4.) The Court **DENIES AS MOOT WITHOUT PREJUDICE** to re-filing closer to trial Lowtech's Motions to Exclude portions of evidence from experts Philip Hampton, Carrie Distler, and Garry Kitchen, and Himanshu Mishra (Dkts. ## 154-1; 158; 155-4; 157-5) and Defendants' Motions to Exclude as to experts, José Zagal, Jim W. Bergman, and Sarah Butler. (Dkts. ## 142; 144; 143.)

FACTUAL BACKGROUND

Lowtech owns the Slither.io video game, which it purports has multiplayer functionality. (Dkt. # 46 at 5.) Lowtech claims it launched Slither.io in March of 2016. (Id.) Lowtech contends that it holds trademarks of its cartoon logo snake (the "Snake Mark"), and the words "SLITHER" and "Slither.io." (Id. at 6–7.)

Lowtech alleges that Snake.io, owned by Kooapps, is an infringing game that does not actually offer multiplayer functionality and instead has users playing against computer-controlled players, not real people. (Dkt. # 46 at 9.) Lowtech maintains that this false presentation of Snake.io as being multiplayer allows Kooapps to take advantage of consumer preference without the investment that Lowtech put into Slither.io to make it truly multiplayer. (Id.) Lowtech further alleges that Snake.io uses a very similar snake logo to Lowtech's as of 2020, when

Lowtech alleges it declined to sell Slither.io to Kooapps. (Id. at 11–12.) Lowtech also contends that Kooapps began using their trademark "SLITHER" by including the word "slither" in the title of the Snake.io game, using "Snake.io – Fun Online Slither." (Id. at 12.)

Defendants contend that Snake.io was originally developed and launched in April of 2016 by another company. (Dkt. # 73 at 17.) Kooapps acquired Snake.io from that owner in May of 2019. (Id.) Kooapps obtained an image trademark for the Snake.io game's logo in 2020. (Id.) Kooapps made changes and additions to Snake.io, such as multiplayer features, live events, and a multiplayer live event leaderboard. (Id.)

Defendants contend that Lowtech "functionally abandoned" Slither.io in 2016, the year it was launched, by not developing regular updates. (Dkt. # 73 at 20.) Defendants claim that Plaintiffs failed to enforce Slither.io's trademarks from 2016 to 2023. (Id. at 21.) Defendants also point out that Lowtech demonetized Slither.io in 2020 by removing all in-game advertisements and purchases. (Id.) Defendants point to these actions by Lowtech as being the cause of Lowtech's loss of market share. (Id.)

## PROCEDURAL BACKGROUND

Lowtech filed suit against Kooapps on November 22, 2023. (Dkt. # 1.) Lowtech amended its Complaint on October 29, 2024, to add Kooapps's

Chief Operating Officer, Chang, and Chief Executive Officer, Wang, as Defendants. (Dkt. # 46.) Lowtech brings claims for trademark infringement, false designation of origin and unfair competition, false advertising, false and fraudulent registration, common law trademark infringement, common law unfair competition, trade dress infringement under the Lanham Act, trademark dilution, unjust enrichment, and requesting cancellation of Kooapps's trademark registration. (Dkt. # 46.)

On February 19, 2025, Defendants amended their Answer to include counterclaims against Lowtech and Howse, who is Lowtech's principal, for common law defamation, business disparagement, tortious interference, and unfair competition. (Dkt. # 73 at 17–38.) Defendants allege that Howse spread falsehoods about Kooapps in May of 2024 in a chat server on Discord dedicated to discussing Slither.io, using anonymous accounts. (Id. at 22–23.) Defendants claim Howse made false statements about Slither.io not having a multiplayer functionality. (Id. at 23–24.) Defendants also allege that Howse encouraged Discord users to leave negative reviews of Snake.io. (Id. at 26.) Defendants also contend that Howse made defamatory comments about Kooapps on Discord, calling their Snake.io a scam. (Id. at 29–30.)

Lowtech and Howse filed their Motion for Summary Judgment on November 14, 2025, as to Kooapps's counterclaims and affirmative defenses.

(Dkt. # 183-2.) This Motion was fully briefed. (Dkts. ## 190; 197-2.) Defendants filed their Motion for Partial Summary Judgment on December 5, 2025, as to Lowtech's false advertising, trade dress infringement, dilution, and fraudulent registration claims and argued that laches bar Lowtech's claims relating to the slither word marks. (Dkt. # 198-4.)

## LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir. 2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant

may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit." Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v.

Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).

On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. White Buffalo Ventures, LLC v. Univ. of Tex. at Austin, 420 F.3d 366, 370 (5th Cir. 2005). "Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law [.]" Joplin v. Bias, 631 F.2d 1235, 1237 (5th Cir. 1980). Each party may move for summary judgment using different legal theories that rely on different sets of material facts. Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. See id.

Additionally, at the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir.

2017). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

Plaintiffs move for summary judgment on Defendants' counterclaims and affirmative defenses. (Dkt. # 183-2.) Defendants move for summary judgment on Plaintiffs' claims for false advertising, trade dress infringement, trademark dilution, fraudulent registration, and unjust enrichment, and argue that laches bar Plaintiffs' claims for trademark infringement, trade dress infringement, and false advertising related to the word marks. (Dkt. # 198-4.) The Court addresses the motions as to each claim below, but begins by analyzing Defendants' affirmative defenses.

### I. Affirmative Defenses

Lowtech moves for summary judgment on Defendants' affirmative defenses of laches, estoppel, acquiescence, waiver, abandonment, failure to mitigate damages, unprotectable marks, and fair use. (Dkt. # 183-2 at 31.) Defendants move for summary judgment on their affirmative defense of laches, as to Lowtech's claims of false advertising, trade dress infringement, and

infringement of the slither word marks. (Dkt. # 198-4 at 33–34.) The Court begins by addressing each affirmative defense, in turn.

A. Laches

Lowtech argues that the applicable analogous statute of limitations is four years and that delay of less than four years is reasonable delay. (Dkt. # 183- 2 at 31.) Defendants move for summary judgment, also contending that the analogous statute of limitations applicable is four years, and that Lowtech delayed seven years in bringing its trade dress and false statement claims, which Lowtech was aware of in early 2016. (Dkt. # 198-4 at 33–34.) Defendants also argue that Lowtech delayed more than four years in bringing its word mark infringement claims, which it was aware of in mid-2019. (Id.)

Laches is an equitable defense which district courts have broad discretion in applying. See Abraham v. Alpha Chi Omega, 708 F.3d 614, 620 (5th Cir. 2013); Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 707 (5th Cir. 1994). The laches defense is "founded on the notion that equity aids the vigilant and not those who slumber on their rights." NAACP v. NAACP Legal Defense & Educational Fund, Inc., 753 F.2d 131, 137 (D.C. Cir.), cert. denied, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Laches, in the trademark context, arises from delay in asserting one's trademark rights, lack of excuse for said delay, and undue prejudice to the alleged infringer

caused by the delay. See Bd. Of Regents, Univ. of Texas Sys. Ex rel. Univ of Texas at Austin v. KST Elec., Ltd., 550 F. Supp. 2d 657, 664 (W.D. Tex. 2008).

To establish a laches defense, Defendants must show: "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; [and] (3) that undue prejudice resulted from the delay." Elvis Presley Enters. v. Capece, 141 F.3d 188, 205 (5th Cir. 1998). "The period for laches begins when the plaintiff knew or should have known of the infringement." Id. The Court will begin by analyzing whether there was delay and if so, if it was excusable.

Defendants contend that Lowtech was aware of potential trade dress infringement and false advertising in April or May of 2016 based on Howse's individual deposition testimony and corporate representative testimony. (Dkt. # 198-4 at 34–35.) Defendants also point to an email between Lowtech employees referring to Snake.io in May of 2016 as a "ripoff game[,]" and an email from Howse to the Google Play Store in June of 2016 demanding "all obvious clones" of Slither.io be removed from the store, including Snake.io. (Id.) Defendants cite as evidence of prejudice the spoliation of evidence of Howse's Discord posts about Snake.io and Kooapps's continued financial investment in Snake.io. (Id. at 37.) Lowtech counters that the trademark claims accrued in December 2020, when Lowtech learned of the 2019 and 2020 redesigns to the Snake logo that made confusion more likely. (Dkt. # 199-4 at 32.) However, Lowtech entirely failed to

address trade dress and the word marks. (Id.) Lowtech filed suit on November 22, 2023. (Dkt. # 1.)

Howse's deposition testimony indicates that Howse believed Snake.io was an "obvious clone" of Slither.io ever since he first became aware of Snake.io in April or May of 2016. (Dkt. # 183-30 at 75–76.) As to trade dress, Howse testified that he felt Snake.io was infringing Slither.io's trade dress ever since he became aware of Snake.io in 2016. (Dkt. # 198-7 at 19–20.) This clearly indicates that Lowtech knew of its potential claim for trade dress infringement well over four years prior to filing suit. As to the word marks, Wang testified that Kooapps changed the name of Snake.io in the Apple App Store to include the tag line "Fun Online Slither" in mid-2019. (Dkt. # 183-8 at 6.) This evidence establishes that Lowtech at least had reason to know of its potential claim for word mark infringement more than four years prior to filing suit, because Howse felt Snake.io infringed Slither.io since Snake.io's release in 2016 and the tag line was public in the Apple App Store. As to false advertising, Howse testified that he was concerned that Snake.io was falsely pretending to have real-time multiplayer when he discovered the game in April or May of 2016. (Dkt. # 198-10 at 18–19.) This evidence establishes that Lowtech knew of its potential false advertising claims at more than four years prior to filing suit. Lowtech's counter argument focuses on the changes made to the Snake.io logo made in 2020, which Kooapps is not

asserting is barred by laches in its Motion for Summary Judgement, and is therefore not persuasive to this Court. (Dkt. # 199-4 at 32–33.) Further, in reviewing the evidence in this case and Lowtech's counter argument, no excuse for Lowtech's delay is evident. (Id.) Howse's testimony and Lowtech's experts' reports and testimony are silent as to why there were no prior enforcement efforts. Thus, this Court finds that Lowtech inexcusably delayed in bringing its claims for trade dress infringement, word mark infringement, and false advertising within the undisputed four year period. See Elvis Presley Enters., 141 F.3d 188, 205; Nat'l Ass'n of Gov't Emps., 40 F.3d at 707–710.

Next the Court will consider the third element of laches, which is whether Lowtech's undue delay prejudiced Kooapps. Kooapps contends it was prejudiced financially by the delay because it developed and invested in Snake.io, which it would not have done if Lowtech were more diligent. (Dkt. # 198-4 at 37.) The evidence makes clear that Kooapps has invested heavily in Snake.io since purchasing it. Koapps developed Snake.io to be available on more platforms, including Apple Arcade, Netlfix, and Nintendo Switch. (Dkt. # 183-8 at 10–11.) Kooapps invested in developing synchronous real-time multiplayer functionality on different platform versions of the game. (Id. at 8–9.) Kooapps also continued to spend on advertising, including collaborations with TikTok influencers. (Dkt. # 199-43; 198-28; 198-27; 199-13; 199-14, 199-43.) Economic prejudice alone is

sufficient to support the applicability of laches and there is no issue of material fact as to whether Kooapps has expended numerous resources on Snake.io that it would not have if Lowtech were more diligent in policing its intellectual property. See Rolex Watch USA, Inc. v. BeckerTime, L.L.C., 96 F.4th 715, 723 (5th Cir. 2024) (finding that ten years of delay allowed defendant to build up a business it would not have otherwise invested in but for plaintiff's delay in filing suit.) Therefore, the Court finds that Lowtech's claims for trade dress infringement, word mark infringement, and false advertising are barred by laches and Defendants are entitled to summary judgment on these claims.

Lowtech's Motion for Summary Judgement as to Defendants' affirmative defense of laches is **DENIED**. Defendants are **GRANTED** summary judgment as to their affirmative defense of laches in relation to Lowtech's claims of trade dress infringement, false advertising, and word mark infringement.

B. Estoppel

Lowtech moves for summary judgment on Defendants' affirmative defense of estoppel, arguing Defendants have not set forth any evidence of deception or gross negligence. (Dkt. # 183-2 at 31–33.) Defendants contend they have created a fact issue in that they relied on Lowtech's silence and inaction as being indicative of Lowtech's intent. (Dkt. # 190.)

To successfully establish an estoppel defense, "defendants would have to demonstrate at least intentional deception through concealment or inaction, or gross negligence amounting to constructive fraud." In re Henderson v. Century Finance Co., 577 F.2d 997, 1001 (5th Cir. 1978). Estoppel "requires a greater showing than mere unreasonable delay and prejudice." Houston Sport Ass'n v. Astro-Card Co., 520 F. Supp. 1178, 1181 (S.D. Tex. 1981).

As discussed above, there is clear evidence establishing that Lowtech knew or should have known of the basis for many of its claims as early as 2016 and 2019 and that there was inaction on Plaintiffs' part during this timeframe. (Dkts. ## 183-30 at 75–76; 198-7 at 19–20; 198-10 at 18–19.) While there is evidence of inaction, that evidence does not speak to the context surrounding the inaction, thus the Court will not infer intent. (Id.) See Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc., 616 F. Supp. 2d 622, 641, 645 (N.D. Tex. 2009) (fraud is rarely proven directly but may be inferred through circumstantial evidence). However, there is enough evidence of inaction and delay by Plaintiffs to create a genuine issue of material fact as to whether Plaintiffs' inaction manifests gross negligence. See Advanced Tech. Incubator, Inc. v. Sharp Corp., No. 2:07-CV-468, 2009 WL 4670435, at *6 (E.D. Tex. Sept. 4, 2009) (finding that delay in requesting a certificate of correction was sufficient to create a fact issue as

to the elements of an estoppel defense). Therefore, Plaintiffs' Motion for Summary Judgment as to Defendants' affirmative defense of estoppel is **DENIED**.

C. Acquiescence

Lowtech moves for summary judgment on Defendants' affirmative defense of acquiescence, arguing that there is no evidence of active consent to the usages. (Dkt. # 183-2 at 32–33.) Defendants counter that they had implicit assurance via Plaintiffs' silence. (Dkt. # 190-5 at 30–31.)

To successfully establish an acquiescence defense, a defendant must show three elements: "(1) assurances by the plaintiff that the defendant could use the mark, (2) reliance by the defendant upon those representations, and (3) undue prejudice." Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations, 779 F.3d 290, 294 (5th Cir. 2015). Assurance can be either implicit or explicit. Luxottica Grp. S.p.A. v. Atl. Sunglasses LLC, No. 4:15-CV-1795, 2017 WL 6885602, at *10 (S.D. Tex. Mar. 24, 2017). Further, silence could constitute implicit assurance. Elvis Presley Enters, Inc., 141 F.3d 188, 206 (5th Cir. 1998).

As this Court discussed above regarding estoppel, there is evidence of inaction on Plaintiffs' part. (Dkts. ## 183-30 at 75–76; 198-7 at 19–20; 198-10 at 18–19.) However, there is not any evidence of the context surrounding Plaintiffs' inaction. Because there is no evidence of the context surrounding this inaction, there is a genuine issue of material fact as to whether the inaction around 2016 to

2019 is sufficient to manifest implicit assurance by Lowtech or Howse. See Trans Tool, LLC v. All State Gear Inc., No. SA-19-CV-1304-JKP, 2022 WL 608945, at *11 (W.D. Tex. Mar. 1, 2022) (denial of summary judgment due to fact issues based on the duration of silence and whether defendant relied on that silence as being an implicit assurance.) Therefore, Plaintiffs' Motion for Summary Judgment on Defendants' affirmative defense of acquiescence is **DENIED**.

D. Waiver

Lowtech moves for summary judgment on Defendants' affirmative defense of waiver, contending that alleged failure to police infringement does not equate to relinquishing its intellectual property rights. (Dkt. # 183-2 at 34.) Kooapps counters that in addition to Lowtech's inaction regarding the alleged infringements at issue in this case, Lowtech also failed to maintain and invest in Slither.io which manifests an intent to relinquish its claims. (Dkt. # 190-5 at 31–32.)

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." To establish waiver, "a defendant must show: (1) that the plaintiff held an existing right, benefit, or advantage; (2) the plaintiff's actual knowledge of the existence of that right, benefit, or advantage; and (3) the plaintiff's 'actual intent to relinquish that right,

or intentional conduct inconsistent with that right.'" Reservoir, Inc. v. Truesdell, 1 F. Supp. 3d 598, 611 (S.D. Tex. 2014).

The first two elements of waiver are not in dispute here, so the Court will only focus on the third element of wavier; whether Lowtech had actual intent to relinquish its intellectual property rights or intentionally acted inconsistently with its intellectual property rights. (Dkts. ## 183-2 at 34; 190-5 at 31–32.) Defendants' only evidence of possible relinquishment or inconsistent action is evidence of the previously discussed inaction by Lowtech around 2016 and 2019 and again, this evidence fails to show any context surrounding the inaction from which to infer any intent. (Dkts. ## 183-30 at 75–76; 198-7 at 19–20; 198-10 at 18–19.) Without any evidence that could speak to intent, Defendants have failed to create a fact issue as to their affirmative defense of waiver. But cf. Ellipse Commc'ns, Inc. v. Caven, No. 3-07-1922-O, 2009 WL 3398709, at *7 (N.D. Tex. Oct. 16, 2009) (reaching the opposite result but concluding that on wavier and abandonment, defendant created a fact issue regarding intent through the deposition testimony of plaintiff's employee, who testified plaintiff had no intent to continue to use the trademark.) Thus, Lowtech's Motion for Summary Judgment on Defendants' affirmative defense of waiver is **GRANTED**.

E. Abandonment

Lowtech moves for summary judgment on Defendants' affirmative defense of abandonment, arguing that abandonment requires complete cessation, as a matter of law. (Dkt. # 183-2 at 34–35.) Defendants counter that Lowtech abandoned Slither.io by failing to introduce new app features, intermittent removal from app stores, failure to invest in the game, and not spending money on advertising. (Dkt. # 190-5 at 34–35.)

A mark is deemed abandoned if use is "discontinued with intent not to resume the use." 15 U.S.C. § 1127(1).

> Intent not to resume may be inferred from circumstances. Nonuse for three consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in the mark.

15 U.S.C. § 1127(1). Use equates to "use in commerce" and the Lanham act defines "use" as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." Id. Abandonment is premised on the owner of the mark demonstrating that circumstances do not justify the inference of intent not to resume use. See Exxon Corp. v. Humble Expl. Co., Inc., 695 F.2d 96, 99 (5th Cir. 1983). "Abandonment generally requires a complete discontinuance of the trademarks use and even minor or sporadic good faith uses of a mark will defeat the defense of abandonment."

Perry v. H. J. Heinz Co. Brands, L.L.C., 994 F.3d 466, 475 (5th Cir. 2021) (citing Electro Source, LLC v. Brandess–Kalt–Aetna Group, Inc., 458 F.3d 931, 938 (9th Cir. 2006)).

First, abandonment is ordinarily a factual inquiry and thus inappropriate for summary judgment. See Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1076 (5th Cir. 1997). Further, the facts here do not suggest abandonment as a matter of law. Again, in this case Defendants have set forth proof of periods of inaction by Lowtech regarding enforcing its intellectual property rights. (Dkts. ## 183-30 at 75–76; 198-7 at 19–20; 198-10 at 18–19.) This evidence of inaction does not speak to non-use of those intellectual property rights. Defendants' contention that Lowtech does not maintain, update, or continue to advertise Slitherio.io game does not equate to discontinued use for the purposes of abandonment because it does not indicate that Lowtech was not using the logo and wordmarks in relation to its Slither.io game. Defendants' contention that Perry is apropos here is unpersuasive because in Perry, there was evidence that the plaintiff had a history of domain squatting, which was akin to a trademark maintenance program, and there is no such evidence here to create that same fact issue. Perry, 994 F.3d at 476. Defendants have not set forth any evidence that Slither.io stopped using the logo or wordmarks at issue. Thus, Plaintiffs' Motion

for Summary Judgment on Defendants' affirmative defense of abandonment is **GRANTED** as Defendants have failed to create a fact issue as to discontinued use.

F. Failure to Mitigate Damages

Lowtech moves for summary judgment on Defendants' affirmative defense of failure to mitigate damages, arguing it set forth evidence that Lowtech mitigated damages by reducing advertising and de-monetizing Slither.io by disabling in game advertisements and purchases. (Dkt. # 183-2 at 34–35) Defendants contend that these actions did not mitigate damages because they caused Lowtech to lose money and that delay in bringing suit also increased damages. (Dkt. # 190-5 at 35–36.)

Failure to mitigate damages, when raised as an affirmative defense, requires the defendant to prove lack of diligence on the part of plaintiff and the amount by which damages were increased by such failure. Operating Tech. Elecs., Inc. v. Generac Power Sys., Inc., 2014 WL 4960136, at *6 (N.D. Tex. Oct. 2, 2014) (citing Geotech Energy Corp. v. Gulf States Telecomm. & Info. Sys., Inc., 788 S.W.2d 386, 390 (Tex.App.-Hous. [14th Dist.] 1990, no writ)). "Failure to mitigate is generally a question of fact for the jury." Id. (citing Sorbus, Inc. v. UHW Corp., 855 S.W.2d 771, 775 (Tex.App.-El Paso 1993, writ denied)). The standard of ordinary care applies to damages mitigation, which considers what an

ordinary prudent person would have done under the same or similar circumstances. Id.

Lowtech has put forth the expert opinions of Jim W. Bergman ("Bergman"), who describes Lowtech's concept behind scaling back monetization to try to increase downloads and usage of Slither.io in 2020. (Dkt. # 198-6 at 69–71.) Defendants contend Bergman's report shows failure to mitigate damages because he opined that demonetizing Slither.io caused over $9 million dollars in damages. (Id.; Dkt. # 190-5 at 35.) However, Defendant has put forth no evidence of what action or inaction by Lowtech would have mitigated damages — what a reasonably prudent app developer would have done to mitigate damages from claims of alleged intellectual property rights infringements, false advertisement, and unfair competition. Whether demonetizing Slither.io mitigated or increased damages remains unclear and is a material fact issue that should be decided by a jury. See Vianet Grp. PLC v. Tap Acquisition, Inc., No. 3:14-CV-3601-B, 2016 WL 4368302, at *11 (N.D. Tex. Aug. 16, 2016) (denied summary judgment as to failure to mitigate damages because plaintiffs created a fact issue on whether defendant could have mitigated its damages and whether a jury could calculate damages that went unmitigated). Therefore, Lowtech's Motion for Summary Judgment as to Defendants' affirmative defense of failure to mitigate damages is **DENIED.**

G. Unprotectable Mark

Lowtech moves for summary judgment on Defendants' affirmative defense of unprotectable mark status, claiming that its rights in the snake logo and word marks have incontestable status. (Dkt. # 183-2 at 35–36.) Defendants counter that the snake logo and word marks have become generic due to third party usage. (Dkt. # 190-5 at 36.)

A mark which refers to an entire class of products is a generic mark because it does not distinguish the product at all and such marks are not protectable under trademark law. Sport Supply Grp., Inc. v. Columbia Cas. Co., 335 F.3d 453, 461 n.7 (5th Cir. 2003). Genericness is analyzed by determining whether the public's perception of the term is primarily the designation of the article. Soc. of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Examiners Inc., 41 F.3d 223, 227 (5th Cir. 1995). Factors to be considered in determining genericness include uncontested generic use by competitors, generic use by the plaintiff, dictionary definition, media usage, testimony from people in the trade and consumer surveys. Am. Airlines, Inc. v. Delta Air Lines, Inc., No. 4:19-CV-1053-O, 2021 WL 3629735, at *11 (N.D. Tex. May 18, 2021) (citing McCarthy on Trademarks and Unfair Competition § 12:13 (5th ed. 2020)). This includes consideration of whether others in the business require use of the word to adequately describe their

product. Id. (citing Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Tex., Austin, 909 F.2d 839, 848 (5th Cir. 1990)).

The Court has found that the Lowtech's claims for infringement of the word marks "SLITHER" and "Slither.io" are barred by laches; therefore, the Court will only analyze the genericness of Lowtech's snake logo, which is included below on the left, with Defendants' snake logo on the right.





(Dkt. # 198-6 at 9.) Of note, Kooapps produced an internal chat from April of 2020 where employees were actively discussing Snake.io's logo redesign. (Dkt. # 190-24 at 15.) Within this chat, Paul Marshall sent a screenshot (included below) taken that same day from the Google Play Store showing logos of snake type games at the time of the redesign, all of which were grossly similar to each other. (Id.; see Dkt. # 190-24 at 15.)




(Id.) While this is not sufficient to evidence genericness outright, it creates a fact issue as to multiple genericness factors, such as whether there was uncontested generic use by others in the market, media usage, and whether others in the space of snake games would need use of an orange, segmented snake with an anthropomorphic face to describe their game. See Am. Airlines, Inc., 2021 WL 3629735, at *11–12. Therefore, Lowtech's Motion for Summary Judgment as to Defendants' affirmative defense of unprotectable marks is **DENIED**.

H. Fair Use

Lowtech moves for summary judgment on Defendants' affirmative defense of fair use, arguing the defense is inapplicable because Defendants used Lowtech's word marks as a source identifier. (Dkt. # 183-2 at 36–38.) Lowtech did not substantively move for summary judgment as to Slither.io's snake logo.

(Id.) Because the Court has found that Lowtech's infringement claims based on their word marks were barred by laches, it need not evaluate the fair use defense.

## II. False Advertisement

Both Lowtech and Defendants bring claims for false advertisement. (Dkts. ## 46 at 22; 73 at 33.) Defendants move for summary judgment on Lowtech's false advertising claim. (Dkt. # 198-4 at 11–14.) Additionally, Lowtech moves for summary judgment on Defendants' false advertising counterclaim. (Dkt. # 183-2 at 14–20.)

### A. Plaintiff's False Advertisement Claim

Lowtech claims that Defendants falsely advertised by representing that Snake.io had multiplayer functionality, which injured Lowtech due to confusion of the Snake.io and Slither.io games. (Dkt. # 46 at 22.) Defendants move for summary judgment on Lowtech's false advertisement claim, arguing that Lowtech cannot show any of Defendants' statements resulted in an injury. (Dkt. # 198-4 at 11–14.) Because this Court has found that Plaintiffs' false advertising claim is barred by laches, it need not evaluate Plaintiffs' claim.

### B. Defendants' False Advertisement Counterclaim

Defendants claim Lowtech and Howse engaged in false advertisement by making false statements about Snake.io not having true multiplayer functionality. (Dkt. # 73 at 33.) Plaintiffs move for summary judgment on

Defendants' false advertisement counterclaim, asserting that Defendants failed to plead an actionable statement and a lack of evidence of causation, materiality, and harm. (Dkt. # 183-2 at 14–20.)

"To establish a claim for false advertising under Section 43(a) of the Lanham Act, a plaintiff must show: (1) a false or misleading statement of fact in connection with goods or services; (2) that either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) where the deception was material, in that it was likely to influence a consumer's purchasing decision; (4) the product was in interstate commerce; and (5) the plaintiff was or is likely to be injured as a result of the statement at issue." Misko v. Backes, No. 3:16-CV-3080-M (BF), 2017 WL 3328123, at *3 (N.D. Tex. July 14, 2017), report and recommendation adopted, No. 3:16-CV-3080-M (BF), 2017 WL 3316155 (N.D. Tex. Aug. 3, 2017) (quoting Tristar Inv'rs, Inc. v. Am. Tower Corp., No. 3:12-CV-0499-M, 2014 WL 1327663, at *17 (N.D. Tex. 2014)). If the statement is shown to be misleading, the plaintiff also must show materiality, which consists of evidence of the statement's impact on consumers. Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir. 2000) (citing American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc., 185 F.3d 606, 614 (6th Cir. 1999)).

For a statement to be actionable under the Lanham Act, it must be a statement of fact, not of general opinion, and the statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Id. (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)). A statement of fact is a statement that "(1) admits being adjudged true or false in a way that (2) admits of empirical verification." Id. (quoting Presidio Enters., Inc. v. Warner Bros. Distrib. Corp., 784 F.2d 674, 679 (5th Cir. 1986)). Proving literal falsity is rigorous and requires determination of what the statement at issue is actually saying. Riddell, Inc. v. Schutt Sports, Inc., 724 F.Supp.2d 963, 975 (W.D. Wis. 2010). Falsity can only be found in an unambiguous statement because if the language at issue is susceptible to numerous reasonable interpretations, that advertisement cannot be literally false. Id.

Plaintiffs contend the statements made on Discord are not actionable under the Lanham Act because they were not "specific and measurable" statements of fact and were either truthful statements, hyperbole, or nonactionable puffery. (Dkt. # 183-2 at 14.) Defendants counter that they are not required to show deception or materiality because the statements were literally false and that they have created a fact issue as to causation and injury based on their evidence of a change in download rates and revenue per user. (Dkt. # 190-5 at 17–18.)

Defendants allege Howse made false statements about Snake.io in 2024 on a public Discord chat server dedicated to discussions about Slither.io, under the usernames Hypah and Hypah2. (Dkt. # 73 at 22–23.) Defendants claim Howse posted, "Snake.io is a fake piece of crap scam app, not multiplayer at all, and their logo is the most obvious brazen trademark violation I've ever seen in my life[.]" (Id. at 23; Dkt. # 190-55.) Defendants also allege that Howse posted, "their clone app is fake multiplayer! they are lying to everyone[.]" (Id. at 24; Dkt. # 190-56.) Defendants also assert that Howse posted, "Snake.io was a completely fraudulent offline scam from April 2016 until October 2023. The app is still a fraud today because the default mode is still a fake offline scam while falsely presenting itself as totally online. The actual multiplayer option they started making available in October 2023 is hidden and mislabeled . . ." (Id. at 25; Dkt. # 190-57.)

The Court begins by analyzing the actionability of the implicated statements from 2024. To be actionable, the statements must be factual and must make "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact." Pizza Hut, Inc., 227 F.3d at 495. Falsity is only determined in an unambiguous statement because language that is susceptible to numerous reasonable interpretations cannot be literally false. Riddell, 724 F.Supp.2d at 975.

Snake.io is a game that has many different versions because it is available on numerous different platforms, including the Apple App Store, Apple Arcade, Google Play, Facebook, Netflix, web browser, and Nintendo Switch. (Dkt. # 183-8 at 8–11.) The statements Defendants contend are actionable only refer to Snake.io generally and not any specific version of the game. (Dkt. # 75 at 22–25.) Lack of reference to a specific version of the game creates ambiguity that undercuts any ability to determine if the statements were true or false because the various versions of Snake.io gained synchronous real-timemultiplayer functionality at different points in time. (Id.) Wang testified that synchronous real-time multiplayer functionality for Snake.io was released on the Google Play store in 2022. (Dkt. # 183-8 at 8.) The same function was released on the Apple App Store version of the game in late 2023. (Id.) However, Wang also testified that Snake.io on the platforms Apple Arcade, Netflix, and Nintendo Switch did not offer synchronous real-time multiplayer at the time of his deposition in 2025. (Id. at 10–11.)

Another glaring point of ambiguity and subjectivity is the use of the term "multiplayer." (Dkt. # 75 at 22–25.) All of the implicated statements only use the simple terms "multiplayer" and "online." (Id.) These statements do not specify "synchronous real-time multiplayer functionality" nor "online multiplayer" functionality. The deposition testimony in this case highlights that the individual

parties and their experts in this case hold varying subjective views on what the simple term "multiplayer" means. (Dkts. ## 183-30 at 131–136; 144–145; 183-8 at 10–11; 190-30.)

Howse's testimony indicates that he considers "multiplayer" to mean real-time synchronous multiplayer functionality of a human playing against other humans online and can include the occasional presence of bots. (Dkt. # 183-30 at 131–136; 144–145.) Wang's testimony indicates that he considers "multiplayer" to be broader and encompass human players competing individually against bots with their individual scores compared on a leaderboard that excludes the bots' scores. (Dkt. # 183-8 at 10–11.) Further, the Parties' experts also disagree on their respective definitions of what "multiplayer" means. (Dkts. ## 199-11 at 7–12; 190-30 at 10.) All of the above identified inconsistencies highlight that the implicated posts are too ambiguous and cannot be reasonably interpreted as objective fact statements. See Pizza Hut, Inc., 227 F.3d at 495; Riddell, 724 F.Supp.2d at 975. Thus, the Court finds that the implicated statements are not actionable under the Lanham Act. Plaintiffs' Motion for Summary Judgment as to Defendants' counter claim of false advertising is **GRANTED**.

## III. Trade Dress Infringement

Lowtech claims that its Snake Mark, Word Marks, and Slither.io trade dress were used by Defendants without authorization and caused confusion about

the origin of Snake.io. (Dkt. # 46 at 20–21.) Defendants move for summary judgment on Lowtech's trade dress infringement claim, arguing that Lowtech's purported trade dress is not protectable because it is functional and Lowtech has not shown its purported trade dress acquired secondary meaning. (Dkt. # 198-4 at 14–23.) The Court will not evaluate the trade dress infringement claim because it has found the Lowtech's trade dress infringement claim is barred by laches.

IV. Trademark Dilution

Lowtech alleges Defendants' unauthorized use of the Snake Mark and Word Marks dilutes their distinctiveness and tarnishes them because Defendants' game is purportedly inferior. (Dkt. # 64 at 28–29.) Defendants move for summary judgment on Lowtech's trademark dilution claim arguing that Lowtech has not shown that their marks are famous. (Dkt. # 183-2 at 23–29.) Because the Court has found that Lowtech's claims for trade dress and word mark infringement are barred by laches, the Court will only address Lowtech's dilution claim based on alleged infringing use of the snake logo.

"Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd., 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008). A claim for trademark dilution under the Trademark Dilution

Revision Act ("TDRA"), requires "(1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark." Univ. of Texas at Austin, 550 F. Supp. 2d at 673–74 (citing Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264–65 (4th Cir. 2007)).

The TDRA requires the mark to be "widely recognized *by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." KST Elec., Ltd., 550 F. Supp. 2d at 673-74 (quoting 15 U.S.C. § 1125(c)(2)(A) (emphasis added)). The four factors to be considered in order to determine whether a mark is sufficiently famous to invoke anti-dilution protection under the TDRA are: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; (iv) Whether the mark was registered [ . . .]." 15 U.S.C. § 1125(c)(2). The fourth factor is not contested; therefore, the Court need not address it.

The Court begins by considering the duration, extent, and geographic reach of advertising and publicity of Lowtech's snake logo. Lowtech's own expert, Bergman, acknowledges that Lowtech does not engage in paid advertisement of Slither.io. (Dkt. # 198-6 at 16.) However, Slither.io has been available globally online since 2016 and in the Apple App Store and Google Play Store. (Id.) Geographic reach is also increased by users sharing their gameplay on global platforms such as YouTube. (Id.) So, while the extent of traditional paid for advertisement may be minimal, the duration and geographic reach of publicity are somewhat established by the evidence put forth by Lowtech to be global and to have lasted over nine years. However, this alone would not be dispositive of sufficient fame.

The Court next considers the second factor, the amount, volume, and geographic extent of sales under Slither.io's snake logo. Under Slither.io's snake logo, the Slither.io games and some licensed merchandises are sold. (Dkt. # 198-6 at 16.) Plaintiffs have put forth evidence of downloads and usage of Slither.io. (Dkts. ## 183-28; 198-6.) Monthly active users of Slither.io peaked at around 22 million monthly active users in 2016, with a fluctuating decrease to around 3 million monthly active users by January of 2025. (Dkt. # 183-28.) Per Bergman's report, monthly downloads of Slither.io from 2019 to January of 2025 peaked at just under 800,000 downloads in January of 2019. (Dkt. # 198-6 at 36.)

Therefore, the amount, volume, and geographic reach of downloads under Slither.io's snake logo are hardly negligible but are also not persuasive of the requisite kind of fame. Evidence of downloads, monthly active users, and revenue relating to the logo would be circumstantial at most and would largely evidence niche market fame not household name status because this evidence only speaks to people who play games on mobile devices, not the general consuming public of the U.S. See Univ. of Texas, 550 F. Supp. 2d at 678

Next, the Court considers the third factor, which is the extent of the actual recognition of Slither.io's snake logo. Defendants point to the survey evidence of their expert, Himanshu Mishra ("Mishra"). (Dkt. # 198-3 at 9.) Mishra conducted a survey to determine recognition of Slither.io's snake logo, which indicated that only 10.7% of survey respondents recognized the snake logo. (Dkt. # 157-1 at 11, 159.) Plaintiff's expert, Sarah Butler ("Butler"), acknowledges in her Reply Report that she did not offer an opinion on whether the snake logo was "famous against the general U.S. population." (Dkt. # 157-3 at 11.) Mishra's survey regarding the fame of the snake logo surveyed U.S. respondents over 18 years of age. (Dkt. # 157-2 at 149–159.)

Lowtech's expert's survey on the fame of the snake logo focused on people who download games on their mobile devices. (Dkt. # 157-3.) This type of survey does not adequately speak to the type of fame required to be protectable

from dilution because it does not speak to whether people in the U.S. at large, including those who do not play games on mobile devices or who do not play games at all, recognize the snake logo. See Univ. of Texas, 550 F. Supp. 2d at 674 (reasoned that whether people in Texas or the Austin metropolitan area recognized the plaintiffs' logo did not equate to being widely recognized by the general consuming public of the United States). For example, it would speak to fame if people in the U.S. who did not play video games could recognize word marks like Halo, Call of Duty, or Grand Theft Auto, as this could indicate the mark had "household name" status. Id. Therefore, the only relevant survey evidence of logo recognition indicated only 10.7% of the general consuming public recognized Slither.io's snake logo, which does not weigh in favor of fame. See Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc., 616 F. Supp. 2d 622, 641, 643 (N.D. Tex. 2009) (19% of respondents believed plaintiff produced item with the surveyed mark or that defendant needed plaintiff's permission to use the mark.)

The Court's above consideration of the factors does not tilt the fame scale in Lowtech's favor. While there is some evidence of global reach, there is only evidence of niche recognition at best under the second factor, and survey evidence disproving the required level of fame. Considering the evidence as a whole and weighing the requisite factors, Lowtech cannot credibly claim their

snake logo has fame. But cf. Dallas Cowboys, 616 F. Supp. 2d at 643. Defendants' motion for summary judgment as to Lowtech's trademark dilution claim based on the snake logo is **GRANTED**.

V. Fraudulent Registration

Lowtech claims Kooapps fraudulently registered a trademark when it registered its cartoon snake logo on November 20, 2020, by making false representations about its ownership of the mark and the nature of the mark. (Dkt. # 46 at 16; 23–24.) Lowtech also seeks cancellation of Kooapps's snake logo's trademark. (Id. at 27–28.) Defendants move for summary judgment on Lowtech's fraudulent registration claim, asserting that Lowtech cannot prove intent because Kooapps held a good faith belief that its logo was distinctive. (Dkt. # 198-4 at 29–32.)

"To seek cancellation, a plaintiff must prove (1) a false representation, (2) regarding a material fact, (3) the registrant's knowledge or belief that the representation is false, (4) the intent to induce reliance on the misrepresentation, (5) reasonable reliance, and (6) damages proximately resulting from the reliance." RJ Mach. Co. v. Canada Pipeline Accessories Co., 116 F. Supp. 3d 795, 815–16 (W.D. Tex. 2015) (citing Burnscraft Mfg. Corp. v. Nat'l Constr. Rentals, Inc., No. H–13–2769, 2014 WL 1386300, at *4 (S.D.Tex. Apr. 9, 2014)). It is extremely difficult to prove fraud if the signer had an honestly held, good faith belief that he

was the senior right holder "[b]ecause the trademark application oath is phrased in terms of a subjective belief[.]" Id.

Lowtech contends that Wang's statements of ownership, entitlement to use, ignorance of conflicting rights, and likelihood of confusion were fraudulent. (Dkt. # 1994 at 28.) To survive summary judgment, Lowtech points to Wang's likelihood of confusion statement as being false based on Kooapp's internal chat evidencing employees, including Wang, discussing the logo redesign. (Id.) Lowtech contends this internal chat shows that the starting point for Kooapp's redesign was Lowtech's branding, so a jury could infer Wang knew there was a likelihood of confusion when he signed the application. (Id. at 28–29.)

The statement regarding confusion that Wang signed is provided below.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

(Dkt. # 193-36.) Wang signed electronically on November 12, 2020. (Id.) Kooapps has produced a Declaration executed by Wang, which states that he "believed that the Snake.io Logo was unique and distinctive, and not confusingly similar to any other logo used in connection with gaming software and related services, including the logo used by the Slither.io game." (Dkt. # 178.) In the chat that Lowtech cites to, Wang responds to AB testing results of potential new logos

by writing "nice! Hum… so that icon is awesome but it looks too similar to Slither.io[.]" (Dkt. # 190-16 at 4.) He goes on to ask the team "how can we make it different?" (Id.; see Dkt. # 190-24 at 5.) As shown previously, the difference became the addition of a crown to Snake.io's logo. (Dkt. # 198-6 at 9.)

Considering all of the above discussed evidence, the issue is narrowed to whether Wang could in good faith subjectively believe the mere addition of the crown vitiated the likelihood of confusion. Lowtech has put forth enough evidence to create a fact issue on this point based on the internal chats from Kooapps during the logo re-design. (Dkts. ## 190-16 at 4; 190-24 at 5; 198-6 at 9.) Therefore, Defendants' Motion for Summary Judgment on Lowtech's fraudulent registration claim is **DENIED**.

## VI. Unjust Enrichment

Lowtech contends that Defendants' use of its Snake Mark, word marks, and trade dress take advantage of consumers' recognition of Lowtech's intellectual property and thereby unjustly enrich Defendants. (Dkt. # 46 at 30.) Defendants move for summary judgment on Lowtech's unjust enrichment claim, as a matter of law, because it is not Lowtech's only remedy nor theory of relief. (DKt. # 198-4 at 38–39.) Lowtech argues that its unjust enrichment claim is permitted by law as an in-the-alternative claim. (Dkt. # 199-4 at 36.) Again, this Court found Lowtech's word mark and trade dress based claims to be barred by

laches, so the Court need only analyze the unjust enrichment claim as to the snake logo.

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." Villarreal v. Grant Geophysical, 136 S.W.3d 265, 270 (Tex. App. San Antonio 2004, pet. denied). "In Texas, a plaintiff may recover under an unjust enrichment theory where a person has 'obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" Birchler v. JPMorgan Chase Bank, No. 4:14-CV-81, 2015 WL 1939438, at *6 (E.D. Tex. Apr. 29, 2015) (citing Heldenfels Bros. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex.1992)). There has been inconsistency in Texas courts on whether unjust enrichment should be treated as a theory of recovery versus a cause of action. See Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc., 965 F.3d 365, 380 (5th Cir. 2020) (comparing Mowbray v. Avery, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied) to HECI Expl. Co. v. Neel, 982 S.W.2d 881, 891 (Tex. 1998)). Regardless, in the Fifth Circuit, awards for unjust enrichment are clearly permitted. Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC, 397 F. Supp. 3d 847, 873 (N.D. Tex. 2019) (citing Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 585 (5th Cir. 1980)). Thus, Lowtech's claim for unjust enrichment from use of the snake logo does not fail at the summary judgment stage, as a matter of law, simply because Lowtech

brings other claims. See id. (unjust enrichment claim does not fail as a matter of law at the summary judgement stage simply because plaintiff also brought a Lanham Act claim). Therefore, Defendants' Motion for Summary Judgment on Lowtech's unjust enrichment claim stemming from use of the snake logo is **DENIED**.

VII. Defamation

Kooapps alleges that Howse, and thereby Lowtech, defamed Kooapps on Discord by falsely claiming Snake.io did not have true multiplayer functionality and by making disparaging remarks about Kooapps's business practices. (Dkt. # 73 at 23–32.) Plaintiffs move for summary judgment on Defendants' counterclaim of defamation on the basis that the multiplayer statements were true, that no statements qualify as being defamatory per se, and there is no evidence of damages and causation. (Dkt. # 183-2 at 20–24.)

Under Texas law, defamation requires "'(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se.'" Warren v. Fed. Nat'l Mortgage Assoc., 932 F.3d 378, 383 (5th Cir. 2019) (quoting Bedford v. Spassoff, 520 S.W. 3d 901, 904 (Tex. 2017)); *accord* WFAA-TV, Inc. v. McLemore, 978 S.W. 2d 568, 571 (Tex. 1998) (reciting Texas defamation

elements). The threshold requirement of a defamation claim is the "publication of a false statement of fact to a third party." Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 623 (Tex. 2018) (citing Exxon Mobil Corp. v. Rincones, 520 S.W.3d 572, 579 (Tex. 2017)). Whether a statement asserts an opinion or a fact is a matter of law to be decided by the court. Carr v. Brasher, 776 S.W.2d 567, 570 (Tex. 1989). Under Milkovich, courts should consider whether a statement is verifiable, as well as the entire context in which the statement was made. 497 U.S. at 21–22, 110 S. Ct. 2695.

Texas common law categorizes defamation as being either per se or per quod. Dallas Morning News, 554 S.W.3d 624. If a statement is "so obviously detrimental to one's good name that a jury may presume general damages," the statement is defamation per se. Id. Typically, a statement that injures a person in their "office, profession, or occupation" is defamation per se. Id. (citing Hancock v. Variyam, 400 S.W.3d 59, 64 (Tex. 2013)). Other categories that are held to be defamation per se include ones that unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity. Copeland v. Bonner, No. 3:13-CV-02440-P, 2015 WL 13620745, at *3 (N.D. Tex. Aug. 24, 2015) (citing Main v. Royall, 348 S.W.3d 381, 390 (Tex. App.—Dallas 2011, no pet.)). Defamation that is not per se, is considered defamation per quod. Id. (citing In re Lipsky, 460 S.W.3d 579, 596 (Tex. 2015)).

Defendants categorized the statements into two categories; the fake multiplayer statements and the business practice statements made on Discord in 2024. (Dkt. # 190-5 at 19.) The Court will address these two categories of statements separately.

The Court begins its analysis with the multiplayer statements. Defendants claim Howse posted, "Snake.io is a fake piece of crap scam app, not multiplayer at all, and their logo is the most obvious brazen trademark violation I've ever seen in my life…" (Dkt. # 73 at 23; Dkt. # 190-55.) Defendants also allege that Howse posted, "their clone app is fake multiplayer! they are lying to everyone[.]" (Id. at 24; Dkt. # 190-56.) Defendants also assert that Howse posted, "Snake.io was a completely fraudulent offline scam from April 2016 until October 2023. The app is still a fraud today because the default mode is still a fake offline scam while falsely presenting itself as totally online. The actual multiplayer option they started making available in October 2023 is hidden and mislabeled . . ." (Id. at 25; Dkt. # 190-57.) The shared underlying verbiage in these statements are scam, fake, lying, and fraud, all of which are used to describe Snake.io's multiplayer functionality and all of which unambiguously charge dishonesty and deception on the part of Kooapps. See Copeland, 2015 WL 13620745, at *3. Because the multiplayer statement all charge deception, they are all reasonably capable of impeaching Kooapps's honesty and integrity; therefore, they all

constitute defamation per se. See Paul v. Findeisen, 2025 WL 1490768, at *5 (W.D. Tex. Mar. 26, 2025), report and recommendation adopted, 2025 WL 1490499 (W.D. Tex. May 22, 2025) (citing Dallas Morning News, 554 S.W.3d at 638).

However, to be actionable as defamatory, the multiplayer statements must be factual statements, not mere opinions. See Dallas Morning News, 554 S.W.3d at 623. Statements of fact are those which are "sufficiently factual to be susceptible of being proved true or false." Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990). As discussed previously, the poster of these statements did not specify which version of the game was being alleged to have "fake" multiplayer and the posts only used the simple term "multiplayer" and did not specify synchronous real-time multiplayer or some other more specific term and was therefore subjective. As this Court finds the multiplayer statements too ambiguous to be actionable under the Lanham Act for false advertisement, these statements are also not sufficiently objectively verifiable to be actionable as defamation. See Barnett v. Univ. of Texas Health Sci. Ctr. At San Antonio, 2023 WL 3605323, at *5 (W.D. Tex. May 2, 2023), report and recommendation adopted, No. CV SA-22-CA-818-FB, 2023 WL 3612339 (W.D. Tex. May 23, 2023) (while opinions may be formed based on factual events, the assertions in the statement were subjective).

Thus, Lowtech's Motion for Summary Judgment as to Defendants' defamation claims based on the multiplayer statements is **GRANTED**.

Next, the Court analyzes the business practice statements. Defendants contend that Howse posted "the developers of Snake.io should all be sent to prison for defrauding millions of people with their scam app[.]" (Dkt. # 73 at 29.) Defendants allege that Howse posted "I shouldn't say much since Kooapps probably sent their goons to lurk in here to look for clues about where to send their hitmen to make the trademark lawsuit go away[.]" (Id.) Defendants also allege that Howse posted "all of these fake .io games are scamming users who spend money on in-app purchases for skins, power-ups, and anything else. Every penny spent on these games was taken by deception and fraud. The whole reason people buy skins and other upgrades in these types of games is in order to show them off to other real players. The developers belong in prison . . ." (Id.) Defendants also contend that Howse posted "the trial date isn't until December 2025, until then I guess they get to do whatever they want. They probably plan to keep scamming people as much as possible and then sell the game by November 2025 (edited) or maybe they'll try to kill me before December 2025." (Id. at 30.)

The business practice statements all use the previously analyzed language charging deception by using words like scam and fraud. However, these statements go farther and use language that may imply criminality to some extent,

by citing that Defendants should be "sent to prison[,]" that they would employ "goons" or "hitmen[,]" and that they may "try to kill me before [the trial date.]" (Dkt. # 73 at 29–30.) Because the two statement stating that Snake.io's developers should be "sent to prison" or "belong in prison" relate to Snake.io being a "scam game" because its multiplayer functionality was not "real," these statements are also too ambiguous to be objectively verifiable as fact statements for the reasons set forth above. The statements that refer to "goons," and "hitmen" are also not actionable as false statements because the poster did not actually allege that Kooapps did anything. These statements used the adverbs of probability; "maybe" and "probably" and are therefore speculative statements. See Dallas Morning News, 554 S.W.3d at 638 ("A statement that fails either test–verifiability or context–is called an opinion."). Statements that are speculative are not objectively verifiable and would therefore be mere opinions. Id. Thus, Lowtech's Motion for Summary Judgment as to Defendants' defamation claims based on the business practices statements is **GRANTED**.

VIII. Business Disparagement

Kooapps alleges that Howse, and thereby Lowtech, disparaged Kooapps when he stated falsely that Snake.io did not have true multiplayer functionality. (Dkt. # 73 at 34–35.) Plaintiffs move for summary judgment on

Defendants' business disparagement counterclaim, arguing that the statements are true and that Defendants cannot show malice or damages (Dkt. # 183-2 at 24–26.)

A claim for business disparagement requires that Plaintiff prove "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." Forbes v. Granada Biosciences, Inc., 124 S.W.3d 167, 170 (Tex. 2003). A plaintiff bringing a business disparagement claim must prove the falsity of the statement as part of their cause of action. Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987). "A statement that is true or substantially true cannot support a claim for either defamation or business disparagement." Broughton v. Livingston Indep. Sch. Dist., 2010 WL 3056862, at *10 (E.D. Tex. July 29, 2010) (quoting Basic Capital Mgmt., Inc. v. Dow Jones & Co., Inc., 96 S.W.3d 475, 480–81 (Tex. App. Austin 2002, no pet.)).

As discussed extensively in this Court's analysis of the multiplayer statements in relation to the false advertising claim, the multiplayer statements are too ambiguous to be determined true or false. Therefore, the multiplayer statements are not actionable as a basis for a claim of business disparagement under the same reasoning. Lowtech's Motion for Summary Judgment on Defendants' business disparagement claim is **GRANTED**.

## IX. Tortious Interference with Prospective Business Relations

Kooapps alleges that Howse, and thereby Lowtech, interfered with its business prospects by making false statements about Snake.io's multiplayer functionality and launching a "smear campaign." (Dkt. # 73 at 35.) Plaintiffs move for summary judgment on Defendants' counterclaim of tortious interference, arguing that Defendants cannot show any tortious act on Plaintiffs' part. (Dkt. # 183-2 at 26–30.) Defendants contend they proved tortious acts by proving the multiplayer statements were defamatory and manifested business disparagement. (Dkt. # 190-5 at 24.)

A claim for tortious interference with prospective business relations requires a plaintiff to prove that "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." Cooper v. Harvey, No. 3:14-CV-4152-B, 2016 WL 4427481, at *10 (N.D. Tex. Aug. 21, 2016) (quoting Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted)). To show a reasonable probability of a prospective

business relationship, mere negotiations are insufficient, but a pre-existing business relationship suffices. N. Cypress Med. Ctr. Operating Co., Ltd. v. Gallagher Benefit Servs., Inc., No. 11-CV-0685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012).

Defendants contend that the multiplayer statements were tortious because they were defamatory and amounted to business disparagement. (Dkt. # 190-5 at 24.) However, this Court has already found that the multiplayer statements were too ambiguous to be true or false and therefore these statements were neither defamatory nor disparaging. Thus, the Court finds the multiplayer statements are not tortious because they do not manifest defamation nor disparagement. Lowtech's Motion for Summary Judgment as to Defendants' claim for tortious interference with a prospective business relationship is **GRANTED**.

X. Unfair Competition Under the Washington Consumer Protection Act

Defendants allege that Lowtech, through Howse's statements about multiplayer functionality and Kooapps's business practices, violated Washington's Consumer Protection Act ("the CPA"). (Dkt. # 73 at 34–35.) Plaintiffs move for summary judgment on Defendants' unfair competition counterclaim, contending that they fail to establish any of the requisite elements. (Dkt. # 183-2 at 30–31.) Defendants contend that their false advertising claim suffices an unfair or deceptive practice under the CPA. (Dkt. # 190-5 at 25–26.) Because the Court

found that the multiplayer statements were not actionable under the Lanham Act, the Court here finds that the multiplayer statements are not actionable as a basis for Defendants' CPA claim. Lowtech's Motion for Summary Judgment as to Defendants statutory unfair competition claim under the CPA is **GRANTED**.

XI. Motions to Exclude Expert Evidence

The Court **DENIES AS MOOT WITHOUT PREJUDICE** to re-filing Lowtech's Motions to Exclude portions of evidence from experts Philip Hampton, Carrie Distler, and Garry Kitchen (Dkts. ## 154-1; 158; 155-4) and Defendants' Motions to exclude as to experts, José Zagal and Jim W. Bergman. (Dkts. ## 142; 144.) The above Motions are denied as moot because the Court did not substantively rely on any implicated portions of the above experts' opinions in ruling on the parties' Motions for Summary Judgment (Dkts. ## 183-2; 198-4). The Court will defer ruling on what expert evidence from the above experts is admissible until trial.

Additionally, Lowtech moves to exclude the portions of the report and deposition of Defendants' expert, Mishra, and limit his anticipated trial testimony. (Dkt. # 157-5.) Kooapps moves to exclude the opinions and testimony of Plaintiffs' expert, Butler. (Dkt. # 143.) The Court will briefly assess each Motion to Exclude below.

In ruling on the parties' Motions for Summary Judgment, the Court only considered the design and results of Mishra's logo fame survey. As to the logo fame survey, Lowtech moves to exclude only two statements it contends are legal conclusions and criticisms of their expert Butler, which the Court neither considered nor relied upon. (Dkt. # 157-1 at ¶ 15, 16.d, 16.f, 375, 377.) Therefore, Lowtech's Motion to Exclude as to expert evidence from Mishra is **DENIED AS MOOT WITHOUT PREJUDICE**. The Court defers ruling on the admissibility of expert evidence from Mishra until trial.

In ruling on the parties' Motions for Summary Judgment, the Court only considered the design and results of Butler's logo fame survey. Defendant moves to exclude portions of Butler's opinions and testimony, but the Motion did not implicate Butler's logo fame survey. (Dkt. # 143.) Therefore, Defendants' Motion to Exclude as to expert evidence from Butler is **DENIED AS MOOT WITHOUT PREJUDICE**. The Court defers ruling on the admissibility of expert evidence from Butler until trial.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (Dkt. # 183-2.) Defendants' counterclaims of false advertising, defamation, business disparagement, tortious interference with a potential business relationship, statutory unfair competition under the CPA, and

affirmative defense of abandonment are hereby **DISMISSED WITH PREJUDICE**. Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (Dkt. # 198-4.) Plaintiffs' claims for false advertising, word mark infringement, trade dress infringement, and trademark dilution are **DISMISSED WITH PREJUDICE**. Defendants' affirmative defenses of estoppel, acquiescence, failure to mitigate damages, unprotectable status, and fair use survive summary judgment.

**IT IS FURTHER ORDERED** that Lowtech's Motions to Exclude portions of evidence from experts Philip Hampton, Carrie Distler, and Garry Kitchen, and Himanshu Mishra (Dkts. ## 154-1; 158; 155-4; 157-5) and Defendants' Motions to Exclude as to experts, José Zagal, Jim W. Bergman, and Sarah Butler (Dkts. ## 142; 144; 143) are **DENIED AS MOOT WITHOUT PREJUDICE** to re-filing closer to trial.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, September 16, 2026.

David Alan Ezra
Senior United States District Judge